KRISTEN L. BOYLES (CSBA #158450)
MICHAEL MAYER (WSBA #32135)
*[Pro Hac Vice Application Pending]*
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA  98104
(206) 343-7340
kboyles@earthjustice.org
mmayer@earthjustice.org

Timothy J. Preso (MSBA #5255)
*[Pro Hac Vice Application Forthcoming]*
EARTHJUSTICE
313 East Main St.
P.O. Box 4743
Bozeman, MT 59772-4743
(406) 586-9699
tpreso@earthjustice.org

GREGORY C. LOARIE (CSBA #215859)
EARTHJUSTICE
50 California Street, Suite 500
San Francisco, CA  94111
(415) 217-2000
gloarie@earthjustice.org

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEFENDERS OF WILDLIFE, CENTER FOR BIOLOGICAL DIVERSITY, SIERRA CLUB, NATIONAL PARKS CONSERVATION ASSOCIATION, OREGON WILD, and HUMANE SOCIETY OF THE UNITED STATES,<br><br>               Plaintiffs,<br><br>     v.<br><br>U.S. FISH AND WILDLIFE SERVICE; DAVID BERNHARDT, U.S. Secretary of the Interior,<br><br>               Defendants. | Case No. 3:21-cv-344<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>(Endangered Species Act, 16 U.S.C. § 1531 *et seq.;* Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*) |

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 1 -

INTRODUCTION

1.      This case challenges the decision of the U.S. Fish and Wildlife Service ("FWS") to delist almost all gray wolves in the lower-48 United States, despite significant threats to the wolves' survival and their nascent recovery.  "Endangered and Threatened Wildlife and Plants; Removal of the Gray Wolf (*Canis lupus*) From the List of Endangered and Threatened Wildlife." 85 Fed. Reg. 69,778 (Nov. 3, 2020) ("Delisting Rule").

2.      Historically, gray wolves were present across nearly all of North America.  For decades, however, gray wolves in the United States were subject to extensive and concerted extermination campaigns.  Wolves were hunted, trapped, and poisoned – at times with the funding and approval of the FWS and its predecessor—until by 1967 there were fewer than 1,000 gray wolves remaining, confined to a small area of northeastern Minnesota along with an isolated population on Isle Royale National Park in Lake Superior.

3.      Gray wolves were among the first species to be listed by the Secretary of the Interior as endangered when, alarmed by the pace of species' decline, Congress in 1973 enacted the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*—"the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).

4.      Under protection of the ESA from killing by humans, gray wolves began to reoccupy their native landscapes.  As a top predator and a "keystone" species, the wolf's return can help restore a more natural balance and support healthy ecosystems.  In the northern Rockies, for instance, the reintroduction of wolves has improved the riparian vegetation along streams, as elk no longer overgraze trees and shrubs in valley bottoms.  However, such beneficial impacts of the wolf's return have been limited to date because wolf recovery is absent from a vast area of the species' historic range that still offer suitable habitat, and even in many areas

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 2 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

where wolves are present, their populations are too small and tenuous to perform their full ecological role in our natural environment.

5.     Nevertheless, FWS has for close to two decades attempted to remove ESA protections for gray wolves.  Beginning in 2003, FWS has proposed a series of downlisting and delisting rules that federal courts have consistently rejected as unlawful.  FWS has repeatedly sought to remove ESA protections from gray wolves by artificially dividing the population into smaller segments in order to declare that each one has recovered.  Federal courts have struck down such rules for not only ignoring the vast amount of available wolf habitat still largely unoccupied, but also for purposefully leaving out "remnant" populations outside of the agency's chosen delisting area.  *See* 85 Fed. Reg. at 69,780–81, Table 1.

6.     Plaintiffs in this case challenge FWS's latest decision to eliminate all federal protections for gray wolves.  Gray wolves still meet the ESA's definition of an endangered species, one that is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6).  FWS once again attempts to justify delisting by myopically focusing on wolves in a particular, limited geography (in this case, the Midwest) in order to justify delisting across the entire country.  In doing so, the final rule selectively combined populations, ignored available historical wolf habitat, and disregarded relatively new wolf populations outside the Midwest as "colonizers" unnecessary to the survival and recovery of wolves in the Midwest. FWS's Delisting Rule does not satisfy the ESA requirements that FWS may delist only those species that are fully recovered and protected by adequate regulatory mechanisms.  The Delisting Rule ignores the best available science, is arbitrary, capricious, an abuse of discretion, and contrary to law, and plaintiffs ask the Court to vacate and remand it.

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

JURISDICTION AND VENUE

7.      Plaintiffs bring this action pursuant to the ESA citizen suit provision, 16 U.S.C. § 1540(g), which waives federal defendants' sovereign immunity.  As required by 16 U.S.C. § 1540(g), plaintiffs provided federal defendants with notice of intent to sue on November 5, 2020 (attached as Exhibit A).  This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question) and may issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201–02.

8.      Venue is properly vested in this Court under 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3), as a number of the plaintiffs reside in this district, plaintiffs have members and offices in California, and many of the consequences of the federal defendants' violations of the law giving rise to the claims occurred or will occur in this district.

INTRADISTRICT ASSIGNMENT

9.      This case is properly assigned to the San Francisco Division or the Oakland Division under Civil L.R. 3-2(c) because many of the plaintiffs and their members are located in counties within those districts.

PARTIES

10.     The plaintiffs in this action are:

A.      Defenders of Wildlife, a non-profit membership organization dedicated to the protection of all native animals and plants in their natural communities, including our country's most imperiled wildlife and habitat.  Headquartered in Washington, D.C., Defenders has seven regional offices, with its California Regional Office located in Sacramento, California. Defenders has more than 1.8 million members and on-line activists across the nation.  Over the last four decades, Defenders has played a leading role in the recovery of wolves across the country.  Defenders supported the Service's decision to list gray wolves as a single species under

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 4 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

the ESA in 1978.  Defenders subsequently assisted with the restoration of gray wolves to the

Rocky Mountains region and the desert southwest in the 1990s and hosted training workshops

and annual interagency wolf management conferences for state, tribal, and federal agencies in

that region from 1999 to 2013.  In 1998, the organization created the Defenders of Wildlife

Proactive Carnivore Conservation Fund, which assists ranchers and farmers with nonlethal,

proactive information and methods that help reduce or prevent livestock losses to wolves.  More

recently, Defenders has worked to recover wolves in California, Oregon, Washington, and the

southern Rocky Mountains.  For example, Defenders' member Ryan Schwarz, a professor of

biology at Ft. Lewis College in Durango, Colorado, has partnered with Defenders' staff in

Colorado to conduct wolf field surveys and to evaluate the suitability of the landscape to support

wolves.  Defenders' member Gary Skiba is a retired Colorado Parks and Wildlife biologist, and

he was the primary author of Colorado's wolf conservation plan, has participated in field surveys

for wolves in Colorado, and has been active in the ongoing effort to restore wolves to the

southern Rocky Mountains.  Defenders submitted comments opposing the proposed gray wolf

delisting.

      B.     <u>Center for Biological Diversity</u>, a non-profit environmental organization

dedicated to the protection of native species and their habitats through science, policy, and

environmental law.  The Center is incorporated in California and headquartered in Tucson,

Arizona, with field offices throughout the United States and Mexico, including in Oakland,

California.  The Center has more than 1.7 million members and on-line activists.  The Center and

its members are concerned with the conservation of imperiled species, including gray wolves,

and with the effective implementation of the ESA.  Center member and California resident

Joshua Able is a professional wildlife photographer who often photographs wolves and has seen

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 5 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

wolves in the region where he lives.  Center staff member and Oregon resident Noah Greenwald has seen wolves in the wild and makes frequent visits to areas in the U.S. where wolves live, including western Oregon's Mt. Hood National Forest, with hopes of again viewing wolves.  By submitting administrative petitions, filing lawsuits, and other advocacy, the Center works to ensure the survival and recovery of wolves across the lower-48 States, including the Great Lakes, Northeast, Pacific Northwest, Southern Rocky Mountains, and elsewhere.  The Center submitted extensive comments on this proposed delisting rule and worked as part of a coalition that delivered over 1.5 million public comments to the Service opposing wolf delisting.  Of those, 650,000 comments came from members of the Center.

C.     Sierra Club, a national nonprofit organization headquartered in Oakland, California, and with 67 chapters nationwide.  Sierra Club has more than 834,000 members dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.  Susan Kane Ronning is a member of the Wildlife Committee of Sierra Club's Washington State Chapter.  She grew up in eastern Washington and has property in Chelan, where the Wenatchee Pack used to roam.  Ms. Ronning hikes, snowshoes, and spends considerable time in the mountains in Washington's Cascade Range, and has seen a wolf while hiking and hopes to see one again.  Sierra Club member James Hines lives in Ventura, California, is passionate about wolves, and has repeatedly traveled to Yellowstone National Park and Denali National Park to see wolves.  The Club's particular interest in this case and the issues which the case concerns stems from a longstanding commitment to the restoration

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 6 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

of healthy wolf populations throughout the United States.  The Sierra Club submitted comments on the proposed gray wolf delisting.

D.    Oregon Wild, a charitable, non-profit corporation headquartered in Portland, Oregon with approximately 20,000 members and supporters who share its mission to protect and restore Oregon's wildlands, wildlife, and waters as an enduring legacy.  Danielle Moser is a full-time staff and member of Oregon Wild who enjoys hiking in forests where wolves are known to live, such as the forests of eastern Oregon and Southern Oregon.  Oregon Wild has a long history of advocacy at the state and federal level for gray wolf recovery in Oregon.  Oregon Wild seeks to protect and restore wolf populations, wolf habitat, and wolf prey populations and seeks to reduce conflicts between wolves and humans.  Oregon Wild submitted comments on the proposed gray wolf delisting.

E.    National Parks Conservation Association ("NPCA"), a non-profit organization whose mission is to enhance and protect the National Park System.  Headquartered in Washington, D.C., NPCA has 27 regional and field offices throughout the country, including the Pacific Regional Field Office in Oakland, California.  NPCA has over 1.3 million members and supporters.  One such member is Colorado resident Jeffrey Davison, a retired Emergency Medical Technician, who enjoys observing wolves and signs of wolves (including howling and tracks) on his ranch on the Little Snake River in Northwest Colorado (nine miles from Dinosaur National Monument) and while hiking and hunting in the nearby area.  Bart Melton is a Washington, D.C., resident and member/staff member of NPCA.  Mr. Melton is concerned personally and professionally about the impact that removal of ESA protections will have on the health of gray wolf population in the lower-48 states.  NPCA regularly advocates that protecting and restoring native wildlife, such as gray wolves, to national parks is essential to ensuring park

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 7 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1   ecosystems are maintained and restored.  As part of a coalition of conservation organizations,

2   NPCA submitted comments opposing the delisting challenged in this lawsuit.

3        F.   The Humane Society of The United States ("HSUS"), the nation's largest animal

4   protection organization.  Founded in 1954, HSUS is a non-profit organization headquartered in

5   Washington D.C., with regional offices throughout the United States.  On behalf of members and

6   supporters nationwide, HSUS works to promote the humane treatment of all animals and the

7   protection and recovery of threatened and endangered species and their habitats.  In furtherance

8   of this mission, HSUS has consistently advocated for gray wolves through participation in

9   federal and state regulatory processes, legislative advocacy, litigation, and public outreach and

10  education.  HSUS submitted detailed comments opposing the delisting rule challenged in this

11  lawsuit.  HSUS has members, including Michigan resident Nancy Warren, who have visited,

12  studied, worked, recreated on, or lived on lands that are home to gray wolves, and intend to

13  continue doing so frequently and on an ongoing basis.  Ms. Warren frequently views wolves and

14  signs of their presence on her property in the Upper Peninsula, which she has placed in a

15  perpetual conservation easement to preserve its quality as habitat, and where she has formed

16  relationships with individual wolves whose unique howls and behaviors she has come to know.

17  Ms. Warren frequently visits, and intends to continue visiting, wolf habitat in Michigan,

18  Minnesota, Wisconsin, and other regions to recreate and view wolves in their natural habitat.

19  During these trips, Ms. Warren has observed wild wolves in three U.S. states and Canada.

20       11.  Plaintiffs have longstanding interests in the preservation and recovery of gray

21  wolves nationwide because they and their members place a high value on wolves as a species

22  and the presence of gray wolves is essential to the healthy functioning of the ecosystems in

23  which they evolved.  Plaintiffs and their members also value individual wolves and wolf packs

24

25  COMPLAINT FOR DECLARATORY
    AND INJUNCTIVE RELIEF - 8 -
26

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

and are harmed by the hunting and trapping seasons that will take place in the Midwest states. Plaintiffs actively seek to protect and recover the gray wolf through a wide array of actions including public education, scientific analysis, and advocacy intended to promote achievement of healthy ecosystems.

12.     Members of each of the plaintiff conservation groups use public land in the southern Rocky Mountains, California, the Pacific Northwest, the Midwest, and the Northeast for recreational pursuits, including hiking, camping, backpacking, hunting, horseback riding, cross-country skiing, wildlife viewing, and aesthetic enjoyment.  Members of the plaintiff groups work in industries, such as tourism, that depend on the opportunity to view wolves.  Members of the plaintiff groups seek to view wolves and signs of wolf presence in the wild, and federal defendants' challenged action will reduce their opportunity to do so.  Each plaintiff group has individual members, who have lived, visited, studied, worked, and/or recreated on lands that are home to the gray wolf, and they have specific intentions to continue to do so frequently and on an ongoing basis in the future.

13.     The decision to eliminate ESA protections for gray wolves will cause ecological harm to the ecosystems throughout the nation where wolves are now found.  The legal violations alleged in this complaint cause direct injury to the aesthetic, conservation, economic, recreational, scientific, educational, and wildlife preservation interests of the plaintiff organizations and their members.

14.     Plaintiffs' aesthetic, conservation, economic, recreational, scientific, and educational interests have been, are being and, unless their requested relief is granted, will continue to be adversely and irreparably injured by federal defendants' failure to comply with

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 9 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

federal law.  These are actual, concrete injuries, traceable to federal defendants' conduct that would be redressed by the requested relief.  Plaintiffs have no adequate remedy at law.

15.    The federal defendants in this action are:

A.    <u>United States Fish and Wildlife Service</u>, a federal agency within the Department of the Interior.  FWS is responsible for administering the ESA with respect to terrestrial wildlife such as gray wolves.

B.    <u>David Bernhardt</u>, the U.S. Secretary of the Interior, in his professional capacity. Secretary Bernhardt has supervisory responsibility over the United States Fish and Wildlife Service, including the administration of the ESA with regard to threatened and endangered terrestrial and freshwater plant and animal species.

## BACKGROUND

A.    <u>The Endangered Species Act</u>

16.    Congress enacted the ESA in 1973 to "provide a program for the conservation of . . . endangered species and threatened species" and to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved."  16 U.S.C. § 1531(b).  To receive full protections of the Act, a species must first be listed by the Secretary of the Interior as "endangered" or "threatened" pursuant to ESA Section 4.  16 U.S.C. § 1533.

17.    The ESA defines "endangered species" as "any species which is in danger of extinction throughout all or a significant portion of its range."  16 U.S.C. § 1532(6).  A "threatened species" is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."  16 U.S.C. § 1532(20). The term "species" is defined to include "any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature."  16 U.S.C. § 1532(16).  Under these definitions, the FWS can list or delist a distinct population segment ("DPS") of a vertebrate

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 10 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

species, even when the species as a whole would not warrant such a listing or delisting action. The listing provisions are contained in Section 4 of the ESA—the section Congress labeled the "cornerstone of effective implementation" of the Act.  S. Rep. No. 97-418, at 10 (1982).

18.    In making decisions to list or delist a species, including a DPS, as "endangered" or "threatened," the ESA requires the Secretary to "determine whether the species is an endangered species or a threatened species because of any of the following factors:

(A)    the present or threatened destruction, modification, or curtailment of its habitat or range;
(B)    overutilization for commercial, recreational, scientific, or educational purposes;
(C)    disease or predation;
(D)    the inadequacy of existing regulatory mechanisms; or
(E)    other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1).  The Secretary must make these determinations "solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species."  16 U.S.C. § 1533(b)(1)(A).

19.    Once a species is listed as "endangered" or "threatened" under the ESA, "all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of [the ESA]."  16 U.S.C. § 1531(c).

B.    Gray Wolves in the United States

20.    The gray wolf (*Canis lupus*) is the largest wild member of the dog family (*Canidae*).  Despite the name, the fur of a gray wolf can range from white to shades of gray to coal black.  Gray wolves are territorial and social animals that exhibit group hunting and opportunistic scavenging behavior, normally living in packs of 7 or fewer animals.

21.    Wolves primarily prey on medium and large mammals.  Wolf populations are self-regulating, and their populations are generally limited by prey availability.  Within the

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 11 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

United States, studies of gray wolves in Yellowstone National Park and elsewhere demonstrate that wolves' predations significantly shape their ecosystems, promoting biodiversity and overall ecosystem health.

22.     Historically, gray wolves were the nation's most common large carnivore, with habitat generally thought to extend across nearly all of North America.  Many Native American cultures revere gray wolves.  With European settlement, however, "superstition and fears … led to widespread persecution of wolves."  68 Fed. Reg. 15,804, 15,805 (Apr. 1, 2003).  According to FWS, "wolves were hunted and killed with more passion and zeal than any other animal in U.S. history."[1]  This hunting, together with an active eradication program sponsored and carried out by FWS and its predecessor agency, resulted in the extirpation of wolves from more than 95 percent of their range in the lower-48 states.

23.     Two subspecies of gray wolves were originally granted legal protection under the Endangered Species Preservation Act of 1966.  32 Fed. Reg. 4,001 (March 11, 1967) (*C. l. lycaon*); 38 Fed. Reg. 14,678 (June 4, 1973) (*C. l. irremotus*).  In January 1974, those wolves were granted protection under the then current version of the ESA.  39 Fed. Reg. 1,171 (January 4, 1974).  Other subspecies of gray wolves were later granted protections under the ESA.  41 Fed. Reg. 17,736 (April 28, 1976 (*C. l. baileyi*); 41 Fed. Reg. 24,064 (June 14, 1976 (*C. l. monstrabilis*).  After recognizing the uncertain scientific validity of the subspecies classifications, the FWS in 1978 reclassified gray wolves as endangered at the species level throughout the contiguous United States, except for a population in Minnesota, which was listed as a threatened species.  43 Fed. Reg. 9,607 (Mar. 9, 1978).

---

[1] U.S. Fish and Wildlife Service, Gray Wolf, March 2003, at 1 ("Gray Wolf Bio), https://www.fws.gov/northeast/graywolf/wolfbio.pdf (last visited Jan. 8, 2021).

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

24. Today, there are recovering wolf populations in the Midwest and the Northern Rocky Mountains; wolves are just beginning their recovery in the Pacific Northwest and California; and wolf habitat has been explored but largely unclaimed by wolves in states including Maine, Colorado, and Utah. Slowly, with the ESA's protections, nationwide wolf recovery has been forward. At the same time, the gray wolf exists on a fraction of its range and at population numbers well below historical levels.

25. These early steps towards the recovery of gray wolves should be celebrated as an American success story. Yet rather than build on the documented progress, for close to twenty years, FWS has proposed stripping away protections and exposing wolves to severe new mortality threats, often relying on versions of a single, flawed legal theory: limited improvements in limited areas can justify widespread delisting. Federal courts have consistently rejected this approach as invalid.

26. In 2003, FWS issued a final rule that created three new wolf DPSs and downlisted two of them. The courts invalidated FWS's attempt because the agency assessed only the status of core populations in portions of the new DPSs and did not apply the statutory listing factors outside of those areas. *See Defenders of Wildlife v. Norton*, 354 F. Supp. 2d 1156, 1170–72 (D. Or. 2005) and *Nat'l Wildlife Fed'n v. Norton*, 386 F. Supp. 2d 553, 564–65 (D. Vt. 2005).

27. Variations on this approach—drawing a narrow DPS while ignoring the broader population and the wider habitat availability—were repeated by FWS with almost clockwork regularity in 2007, 2008, 2009, and 2011. These attempts were challenged by wolf advocates— including plaintiffs here—and routinely rejected by the courts. *See Humane Soc'y of the United States v. Kempthorne*, 579 F. Supp. 2d (D.D.C. 2008) (vacating rule); *Defenders of Wildlife v. Hall*, 565 F. Supp. 2d 1160 (D. Mont. 2008) (enjoining rule); *Humane Soc'y of the United States*

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 13 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1  *v. Salazar*, No. 09-1092-PLF (D.D.C. 2009) (settlement vacating rule); *Defenders of Wildlife v.*

2  *Salazar*, 729 F. Supp. 2d 1207 (D. Mont. 2010) (vacating rule); *Humane Soc'y of the United*

3  *States v. Jewell*, 76 F. Supp. 3d 69 (D.D.C. 2014) (vacating rule), *aff'd* 865 F.3d 585 (D.C. Cir.

4  2017).

5      28.    FWS delisted the Northern Rocky Mountains DPS of gray wolves, with the

6  exception of wolves in Wyoming, in 2011, as directed by Congress, Public Law 112-10, § 1713.

7  Wyoming wolves were delisted in 2017.  *Defenders of Wildlife v. Zinke*, 849 F.3d 1077 (D.C.

8  Cir. 2017).

9      C.    <u>2020 Delisting Rule</u>

10      29.    In March 2019, the FWS proposed eliminating ESA protections for the gray wolf

11  throughout the contiguous United States, except for a small population of Mexican gray wolves

12  (*C. l. baileyi*) in Arizona and New Mexico.  84 Fed. Reg. 9,648 (Mar. 15, 2019).  Over 1.5

13  million comments on the proposal were ultimately received, an outpouring that may have led the

14  FWS to extend the public comment period by an additional two months and hold an

15  informational open house and public hearing on the proposal.

16      30.    Numerous members of Congress and more than 100 scientists signed letters of

17  opposition while top government officials in California, Oregon, and Washington all spoke out

18  against the proposed rule.  A scientific peer review commissioned by FWS provided sharp

19  criticism of the proposal, with several of the scientists opposing the rule as falling short of the

20  best available science.  Summary Report of Independent Peer Reviews for the U.S. Fish and

21  Wildlife Service Gray Wolf Delisting Review (May 2019).

22      31.    The peer review report included the comments of one eminent scientist who found

23  that the FWS failed to "provide coherent factual support or logical explanation for the agency's

24  conclusions," bemoaned the "lack of detail and rigor in the treatment of genetic issues," and

25  COMPLAINT FOR DECLARATORY

26  AND INJUNCTIVE RELIEF - 14 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

faulted the "extreme oversimplification" of wolf genetics.  Summary Report, App. C, Reviewer 2—Dr. Charles (Carlos) Carroll at 5–7.  Other independent peer reviewers were similarly critical. Reviewer 4—Dr. Adrian Treves at 1, 9–21 ("the proposed rule does not address human-caused mortality or habitat suitability adequately"); Reviewer 5—Dr. Daniel R. MacNulty at 5 ("I found no scientific information in the Proposed Rule or Draft Biological Report supportive of the Service's interpretation that western listed wolves are not discrete from wolves in Minnesota, Wisconsin, and Michigan.");

32.     Nevertheless, on November 3, 2020, FWS moved forward with its plans and issued its Final Rule delisting the gray wolf.  85 Fed. Reg. 69,844 (Nov. 3, 2020).  The Delisting Rule became effective on January 4, 2021.

33.     For any delisting, FWS's analysis must include the already-listed entity.  Yet FWS considered the Minnesota and the lower-48 populations together and delisted "the gray wolf entity," claiming "neither of the listed entities is a DPS."  85 Fed. Reg. at 69,784.

34.     Furthermore, similar to its prior failed delisting efforts, FWS limited its focus to the wolf populations in the Midwest, ignoring habitat in the southern Rockies and Northeast altogether and dismissing the gray wolf populations in the Pacific Northwest as unimportant to wolf recovery.

35.     As emphasized by one of the FWS peer reviewers, the assumption that the loss of all gray wolf populations outside the Great Lakes region would not threaten the listed entity relies on faulty science.  Summary Report, App. C, Reviewer 2—Dr. Charles (Carlos) Carroll at 8–9, 16.

36.     Compounding its errors, the Delisting Rule rests on population targets set out in the Service's 1992 Recovery Plan for the Eastern Timber Wolf to conclude that recovery has

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 15 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

been achieved.  As with the Delisting Rule itself, the plan is concentrated on the status of wolves in the Midwest, specifically Minnesota.  First approved in 1978 and last updated over 25 years ago, the plan does not account for the best available science and is entirely unsuitable for assessing wolf recovery in 2020, a quarter-century later.

CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF

Violation of the Endangered Species Act:
Failure to Apply Listing Factors to Entire Gray Wolf Population

37.     ESA Section 4(a) sets forth a five-factor test for determining whether a species is threatened or endangered, 16 U.S.C. § 1533(a)(1)(A)–(E).

38.     On the basis of these factors, for delisting, FWS must determine whether a species has recovered and no longer meets the listing factors.  The delisting evaluation must include rational consideration of the relevant species that was originally listed.

39.     In this instance, the relevant "species" are the Minnesota and lower-48 states' wolf populations.  *See* 43 Fed. Reg. 9,607 (listing wolves in Minnesota as threatened and wolves in the lower-48 U.S. states and Mexico as endangered).

40.     FWS's analysis of the Section 4(a) factors focused nearly exclusively on the wolf population in Minnesota, Michigan, and Wisconsin.  FWS analyzed some of the factors for wolves in Washington, Oregon, and California, but only to determine how those populations affected wolves in the Midwest.

41.     Consequently, large portions of the lower-48 gray wolf population will lose ESA protections despite the FWS's failure to assess the status of those wolves under the statutory listing factors.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 16 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

42.     FWS also noted that while it believed that "neither of the two gray wolf listed entities constitute valid listable entities," 84 Fed. Reg. at 9,686, it did not act solely on that basis in the Delisting Rule.  "Instead, [FWS] elected to consider whether the gray wolves within the currently listed entities meet the definition of a threatened or an endangered species, in this case whether they are recovered."  85 Fed. Reg. at 69,844.  Nevertheless, FWS's determination that the gray wolf listed entities do not constitute valid listable entities was arbitrary.

43.     Moreover, FWS justified its incomplete assessment of the threats facing wolves in Washington, Oregon, and California on the erroneous grounds that wolves in these states are an extension of the wolf population in the delisted Northern Rocky Mountains DPS.  85 Fed. Reg. at 69,843.  Those wolves are not part of the Northern Rocky Mountains DPS, and FWS did not attempt to modify the Northern Rocky Mountains DPS to include them.  FWS cannot rationally dismiss threats to these wolves on the basis that they originated from a DPS that no longer encompasses them.

44.     In addition, FWS failed to utilize the best available science to assess the stability, genetic health, taxonomic status, and habitat of the listed wolf population across the lower-48 states, including a failure to adequately assess the minimum viable population and effective population sizes necessary to ensure long-term genetic viability.

45.     FWS further departed from the best available science by relying on a decades-old recovery plan that is based heavily on wolf numbers in the Midwest, magnifying the agency's failure to adequately consider the status of wolves elsewhere.  Such a plan does not provide the "objective and measurable criteria" to support delisting outside of the plan's geographic scope. 16 U.S.C. § 1533(f)(1)(B)(i)–(iii).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 17 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

46.     FWS's failure to adequately apply the ESA factors to the entire listed wolf population in the Delisting Rule and its reliance on an outdated and inadequate recovery plan violates the ESA, ignores the best available science, and is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.  16 U.S.C. § 1533; 5 U.S.C. § 706.

SECOND CLAIM FOR RELIEF

Violation of the Endangered Species Act:
Failure to Assess Gray Wolves' Status Within Significant Portions of Their Current Range

47.     The ESA defines endangered and threatened species as "any species which is in danger of extinction or is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range[.]" 16 U.S.C. § 1532(6), (20).  The ESA does not define the phrase "significant portion of its range," although the FWS now interprets the term to include only "current" range.  *See* 79 Fed. Reg. 37,578 (July 1, 2014).

48.     FWS dismissed threats to wolves in significant portions of their range by improperly constricting its definition of "current range."  FWS has acknowledged documented wolves in Vermont, Massachusetts, New York, Indiana, Illinois, Iowa, Missouri, North Dakota, South Dakota, Nebraska, Kansas, Colorado, Utah, Arizona, and Nevada over the last twenty years.  85 Fed. Reg. at 69,789.  Independent reviews have documented wolves in many more states.

49.     FWS, however, did not consider these areas to be part of the gray wolf's current range because they exist outside of established wolf packs or breeding pairs in the Midwest and Pacific Northwest.

50.     Limiting current range in such a way is not consistent with the FWS's own policy that defines range to encompass the "general geographical area within which the species is

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 18 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

currently found, including those areas used throughout all or part of the species' life cycle, *even if not used on a regular basis*." 79 Fed. Reg. at 37,583 (emphasis added).

51.     The delisting rule is also virtually silent on wolves and wolf habitat in Colorado, Utah, and the northeast United States.  The lack of established wolf packs in Colorado, Utah, and New Mexico is used as an excuse to avoid consideration of suitable wolf habitat there.  Colorado alone could support a population of more than 1,000 wolves, based on prior habitat modeling.

52.     FWS arbitrarily assessed whether portions of the gray wolf's range are "significant," 16 U.S.C. § 1532(6), repeating a circular definition of "significant" that has already been rejected by courts and is contrary to the ESA's conservation purpose.  *Id*. §1531(b).

53.     Under FWS's policy for interpreting "significant portion of [the] range" ("SPR Policy"), listing a species based on threats in a significant portion of its range would be considered warranted only if three conditions were satisfied: (1) the species was neither endangered nor threatened throughout all of its range; (2) the portion's contribution to the viability of the species was so important that, without the members in that portion, the species would be endangered or threatened throughout all of its range; and (3) the species was endangered or threatened in that portion of its range.  79 Fed. Reg. 37,578.

54.     The courts rejected FWS's SPR position as "illusory," because "if a portion of a species' range is so vital that its loss would render the entire species endangered or threatened, and the species is endangered or threatened in that portion, then the entire species is necessarily endangered or threatened.  *Threats that render a species endangered or threatened in such a vital portion of its range should necessarily be imputed to the species overall.*"  *Center for Biological Diversity v. Jewell*, 248 F. Supp. 3d 946, 956 (D. Ariz. 2017) (emphasis added); *Desert Survivors v. U.S. Dep't of Interior,* 321 F. Supp. 3d 1011 (N.D. Cal. 2018).  The district

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 19 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1   court in *Desert Survivors* vacated the "significant portion" element of the SPR Policy

2   nationwide.  336 F. Supp. 3d 1131, 1134–37 (N.D. Cal. 2018).

3       55.   Although FWS asserted in the Delisting Rule that its approach was "substantively

4   different" from the way the agency defined "significance" in its vacated SPR policy, there is no

5   material substantive difference and any distinction in its reasoning is legally inconsequential.

6   85 Fed. Reg. at 69,854.

7       56.   FWS maintained in the Delisting Rule that, for each of the combinations of wolf

8   populations considered "these portions are not 'significant' under any reasonable definition of

9   that term because they are not biologically meaningful to the [listed] entity in terms of its

10   resiliency, redundancy, or representation."  *Id.* at 69,882, 69,885, 69,888, 69,889, 69,892,

11   69,893.

12       57.   As a result of its flawed logic, FWS determined that there are no significant

13   portions of the gray wolf's range because the single gray wolf population that resides in the three

14   Western Great Lakes states—Minnesota, Michigan, and Wisconsin—is neither threatened nor

15   endangered.  This disregard for the status of wolves that are found in northeastern and western

16   states ignores the specific command of Congress to consider other, "significant" portions of the

17   species' range.  As courts have found, such an interpretation renders the statutory language mere

18   surplusage.

19       58.   Similarly, FWS dismissed wolves on the West Coast because only a small number

20   of animals currently live there and characterized the Pacific wolves as "colonizing wolves" from

21   the Northern Rocky Mountains whose presence is unnecessary for wolf recovery.  Yet when the

22   Northern Rocky Mountain DPS was carved from the lower-48 listing, FWS found that it was

23   discrete from any wolves that could repopulate the west coast states due to the stretches of

24

25   COMPLAINT FOR DECLARATORY
26   AND INJUNCTIVE RELIEF - 20 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

unsuitable habitat between them.  73 Fed. Reg. 10,518, 10,519 (Feb. 27, 2008).  Reversing itself, FWS now claims, without adequate justification, that the Pacific wolves are not distinct and not "significant."  In fact, the best available science shows that wolf populations on the West Coast and elsewhere constitute significant portions of the gray wolf's range where wolves remain threatened with extinction.

59.     FWS's failure to adequately consider whether wolves are threatened or endangered throughout a significant portion of their range in the Delisting Rule violates the ESA, ignores the best available science, and is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.  16 U.S.C. §§ 1532, 1533; 5 U.S.C. § 706.

THIRD CLAIM FOR RELIEF

Violation of the Endangered Species Act:
Failure to Adequately Consider Existing Management by States

60.     FWS must determine whether the lower-48 gray wolf entity remains endangered or threatened because of any of five factors, including "the inadequacy of existing regulatory mechanisms" and the "overutilization" from, *inter alia*, commercial and recreational purposes. 16 U.S.C. § 1533(a)(1)(B)&(D).

61.     If delisting is finalized, each individual state would handle wolf management. While there are states that have welcomed wolves, some are overtly hostile to wolf recovery, some will regulate as game animals and allow hunting and trapping, and some simply have no plans at all.

62.     The majority of states within the lower-48 have no protections in place for gray wolves; including states that have a wolf presence like Indiana, Kentucky, Massachusetts, Maine, Missouri, Ohio, Utah, and Vermont.  *See* 78 Fed. Reg. at 35,675.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 21 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

63.     Other states seek to actively prevent recovery of the species.  For example, Utah requires state wildlife officials to capture and kill any wolf that comes into the state to prevent the establishment of a viable wolf pack.  Utah Code § 23-29-201.  South Dakota in 2013 passed legislation designating wolves in the eastern half of the state as "varmints" that can be shot on sight.  S.D. Codified Laws § 41-1-1.  A number of states with wolves within their borders have classified wolves as furbearers or game animals and would likely allow regulated hunting and trapping and livestock predation control upon removal of federal protections, including Iowa, Kansas, Michigan, Minnesota, Nevada, North Dakota, Oregon, South Dakota, and Washington. Wisconsin is required to have a wolf hunting season under state statute.  Wis. Stat. § 29.185(1m).

64.     Several of these states have committed to managing wolves for an aggressive population decline following delisting, on the basis of inadequate and out-of-date management plans that do not reflect the best available science regarding the super-additive effects of hunting mortality on wolf populations or the population sizes necessary to maintain wolves' genetic viability over the short and long term.  FWS failed to adequately assess the deficiencies of these plans and the resulting threats that wolves will face post-delisting under such plans.

65.     FWS also failed to adequately review state wolf management plans in Washington, Oregon, and California.  *See* 85 Fed. Reg. at 69,835–37.  California and Oregon only recently adopted wolf management plans, and their effectiveness is uncertain. Washington's state wolf management plan has been controversial, has led to multiple years of state lethal control actions, and threatens to preclude permanent recovery.

66.     FWS's failure to fully consider the inadequacy of existing regulatory mechanisms and overutilization for commercial and recreational purposes in the Delisting Rule violates the

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 22 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

ESA, ignores the best available science, and is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.  16 U.S.C. § 1533; 5 U.S.C. § 706.

## FOURTH CLAIM FOR RELIEF

Violation of the Endangered Species Act:
Failure to Consider Gray Wolves Lost Historical Range

67.     FWS must determine whether the lower-48 gray wolf entity remains endangered or threatened because of any of five factors, including "the present or threatened destruction, modification, or curtailment of its habitat or range."  16 U.S.C. § 1533(a)(1)(A).

68.     It is recognized that "gray wolves have been extirpated from most of the southern portions of their historical North American range," with undisputed estimates that "95% of the gray wolf's historical range has disappeared."  *Humane Soc'y v. Zinke*, 865 F.3d at 606.

69.     FWS failed to analyze the impact of that loss of historical range on the survival of the gray wolves as a whole or in various segments.

70.     FWS's delisting rule discussed historical range and abundance of gray wolves (85 Fed. Reg. at 69,786 and Figure 2) and contained a section entitled historical context (85 Fed. Reg. at 69,792).  Yet FWS omitted lost historical range in its actual delisting analysis.  *Id.* at 69,853 ("In other words, we interpret 'range' in these definitions to be current range, i.e., range at the time of our analysis.").  This omission is particularly problematic with respect to areas in the Northeast as there is no analysis at all of how that lost range affects the viability of wolf populations in other areas.

71.     FWS's failure to consider the existing destruction and curtailment of the gray wolves' historical habitat in the Delisting Rule violates the ESA, ignores the best available science, and is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law. 16 U.S.C. § 1533; 5 U.S.C. § 706.

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

FIFTH CLAIM FOR RELIEF

Violation of the Endangered Species Act and the Administrative Procedure Act:
Denial of Petition to Designate Distinct Population Segments

72.     In 2018, plaintiffs Center for Biological Diversity and Humane Society of the United States submitted to FWS a Petition to Maintain Protections for Gray Wolves (*Canis lupus*) in the Lower-48 States as Endangered or Threatened "Distinct Population Segments" Under the Endangered Species Act (December 17, 2018).

73.     In the Delisting Rule, FWS denied the petition without rational justification, summarily and unjustifiably finding that it did not present substantial scientific or commercial information indicating that the petitioned actions were warranted.  85 Fed. Reg. at 69,778, 69,878–79.

74.     FWS's denial violates the ESA, ignores the best available science, and is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.  16 U.S.C. § 1533; 5 U.S.C. §§ 706; 555(e).

PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

(A)     Declare that FWS violated the ESA and its implementing regulations in promulgating the 2020 Delisting Rule;

(B)     Hold unlawful and vacate the 2020 Delisting Rule;

(C)     Reinstate FWS's prior rule affording ESA protections for gray wolves in the lower-48 states;

(D)     Award plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees; and

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 24 -

1    (E)    Grant plaintiffs such further and additional relief as the Court may deem just and

2          proper.

3        DATED this 14th day of January, 2021.

4                                    Respectfully submitted,

5                                    *s/ Kristen L. Boyles*
                                     KRISTEN L. BOYLES (CSBA #158450)
6                                    MICHAEL MAYER (WSBA #32135)
                                     *[Pro Hac Vice Application Pending]*
7                                    EARTHJUSTICE
                                     810 Third Avenue, Suite 610
8                                    Seattle, WA  98104
                                     (206) 343-7340
9                                    kboyles@earthjustice.org

10                                   TIMOTHY J. PRESO (MSBA #5255)
                                     *[Pro Hac Vice Application Forthcoming]*
11                                   EARTHJUSTICE
                                     313 East Main Street
12                                   Bozeman, MT  59715
                                     (406) 586-9695
13                                   tpreso@earthjustice.org

14                                   *Attorneys for Plaintiffs*

15                                   GREGORY C. LOARIE (CSBA #215859)
                                     EARTHJUSTICE
16                                   50 California Street, Suite 500
                                     San Francisco, CA 94111
17                                   (415) 217-2000
                                     gloarie@earthjustice.org

18
                                     *Local Counsel for Plaintiffs*
19

20

21

22

23

24

25  COMPLAINT FOR DECLARATORY          *Earthjustice*
                                       *810 Third Avenue, Suite 610*
    AND INJUNCTIVE RELIEF - 25 -       *Seattle, WA  98104-1711*
26                                     *(206) 343-7340*