Stanford H. Atwood, Jr., CA Bar No. 37362
Atwood & Associates
750 University Avenue, Suite 130
Los Gatos, California 95032
Tel:     408-395-5503
Fax:     408-395-5519
stanford@atwoodlaw.net

*Attorney for Defendant-Intervenor-Applicants*
*National Rifle Association of America and*
*Safari Club International*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| DEFENDERS OF WILDLIFE, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. FISH AND WILDLIFE SERVICE and DEBRA HAALAND, U.S. Secretary of the Interior, <br><br> Defendants, and <br><br> NATIONAL RIFLE ASSOCIATION OF AMERICA and SAFARI CLUB INTERNATIONAL, <br><br> Defendant-Intervenor-Applicants. | Case No. 4:21-cv-344-JSW <br><br> **Related Cases:** <br> 4:21-cv-349-JSW <br> 4:21-cv-561-JSW <br><br> **[PROPOSED] NOTICE OF MOTION AND MOTION TO DISMISS BY NATIONAL RIFLE ASSOCIATION OF AMERICA AND SAFARI CLUB INTERNATIONAL** <br><br> **Hearing Date and Time:** To be determined based on disposition of attached Motion to Intervene |

**[PROPOSED] NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, upon granting of the attached Motion to Intervene and as

directed by the Honorable Jeffrey S. White, the National Rifle Association of America ("NRA")

and Safari Club International ("SCI"), through this Notice and the attached documents, will

respectfully move the Court to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(1).

NRA and SCI Notice of Motion and Motion to Dismiss, Case No. 4:21-cv-344-JSW

1

That motion will be heard at Courtroom 5, 2d Floor, Oakland Federal Courthouse, 1301 Clay Street, Oakland, California 94612.

As explained in the attached Memorandum of Points and Authorities, Plaintiffs Defenders of Wildlife *et al.* have failed to allege the elements of constitutional standing. Accordingly, this Court lacks jurisdiction to hear this matter and NRA and SCI respectfully request that the Complaint be dismissed under Rule 12(b)(1).

Dated this 2nd day of April, 2021.

/s/ Stanford H. Atwood, Jr.
Stanford H. Atwood, Jr.
CA Bar No. 37362
Atwood & Associates
750 University Avenue, Suite 130
Los Gatos, California 95032
Tel:    408-395-5503
Fax:    408-395-5519
stanford@atwoodlaw.net

*Attorney for Defendant-Intervenor-Applicants National Rifle Association of America and Safari Club International*

Stanford H. Atwood, Jr., CA Bar No. 37362
Atwood & Associates
750 University Avenue, Suite 130
Los Gatos, California 95032
Tel:    408-395-5503
Fax:    408-395-5519
stanford@atwoodlaw.net

*Attorney for Defendant-Intervenor-Applicants*
*National Rifle Association of America and*
*Safari Club International*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| DEFENDERS OF WILDLIFE, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. FISH AND WILDLIFE SERVICE and DEBRA HAALAND, U.S. Secretary of the Interior,<br><br>Defendants, and<br><br>NATIONAL RIFLE ASSOCIATION OF AMERICA and SAFARI CLUB INTERNATIONAL,<br><br>Defendant-Intervenor-Applicants. | Case No. 4:21-cv-344-JSW<br><br>**Related Cases:**<br>    4:21-cv-349-JSW<br>    4:21-cv-561-JSW<br><br>**[PROPOSED] NOTICE OF MOTION AND MOTION TO DISMISS BY NATIONAL RIFLE ASSOCIATION OF AMERICA AND SAFARI CLUB INTERNATIONAL**<br><br>**Hearing Date and Time:** To be determined based on disposition of attached Motion to Intervene |

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-CV-344-JSW

i

## SUMMARY OF THE ARGUMENT

Plaintiffs' Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs lack standing to assert their claims. *E.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs have not "clearly" alleged an injury in fact that is (i) concrete and particularized, and (ii) actual or imminent. *Id.* The Complaint identifies aesthetic, recreational, and other interests of Plaintiffs' members in viewing gray wolves and recreating in areas near gray wolves, primarily in the Western U.S., but fails to explain how the delisting results in concrete harm to these interests. Plaintiffs assume that delisting will harm these interests, which is insufficient for standing. *Pub. Emps. for Envtl. Responsibility v. Bernhardt*, 2020 WL 601783, *4 (D.D.C. Feb. 7, 2020).

Plaintiffs also fail to clearly allege an imminent injury simply because states may, but are not required to, adopt regulations that allow for the killing of gray wolves. The Supreme Court has rejected similar allegations. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013). Moreover, this claim is factually unsupported, as the states where Plaintiffs have identified an interest all restrict the taking of gray wolves or lack resident gray wolf populations.

Plaintiffs do not establish a particularized injury because they fail to meet the geographic nexus requirement. They must use an area affected by the delisting, not an area "roughly 'in the vicinity' of it." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565-66 (1992). The Complaint does not identify any members using specific areas where the opportunity to observe wolves will decline as a result of the delisting.

Last, Plaintiffs have not established the third element of standing, redressability. They ask the Court to vacate and remand the delisting, but this Court cannot force the U.S. Fish and Wildlife Service ("FWS") to undertake a particular recovery program for wolves that will cause more wolves to inhabit the Western U.S. At most, this Court can require further analysis and explanation from the FWS. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Because the Court cannot redress Plaintiffs' claimed injury, Plaintiffs lack standing. *See Nuclear Info. & Resource Serv. v. NRC*, 457 F.3d 941, 955 (9th Cir. 2006).

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-344-JSW

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ..................................................... ii

TABLE OF CONTENTS.................................................................. iii

TABLE OF AUTHORITIES ......................................................... iv

STATEMENT OF THE ISSUES TO BE DECIDED............................................1

STATEMENT OF RELEVANT FACTS ...............................................1

ARGUMENT:  PLAINTIFFS HAVE NOT CLEARLY ALLEGED
THEIR STANDING .......................................................................3

    A.  Plaintiffs have not established that they suffered an injury in fact. ............4

        1.  The Complaint does not clearly allege a concrete and imminent
           injury in fact from delisting. ...............................................5

        2.  Plaintiffs' injury is too speculative to be actual or imminent. ...............6

        3.  Plaintiffs' injury does not meet the geographic nexus requirement. .....9

    B.  A favorable Court order will not redress Plaintiffs' injury.......................13

CONCLUSION.................................................................................14

# TABLE OF AUTHORITIES

**Cases**

Am. Diabetes Ass'n v. U.S. Dep't of the Army,
   938 F.3d 1147 (9th Cir. 2019) ........................................................................4

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ......................................................................................3

Ashley Creek Phosphate Co. v. Norton,
   420 F.3d 934 (9th Cir. 2005) ....................................................................9, 12

Clapper v. Amnesty Int'l USA,
   568 U.S. 398 (2013) ............................................................................. ii, 5, 7

Ctr. for Bio. Diversity v. Bernhardt,
   946 F.3d 553 (9th Cir. 2019) ........................................................................3

Ctr. for Bio. Diversity v. Bernhardt,
   No. 19-CV-5206, 2020 WL 4188091 (N.D. Cal. May 18, 2020) ...................4

DaimlerChrysler Corp. v. Cuno,
   547 U.S. 332 (2006) ......................................................................................6

Daniels-Hall v. Nat'l Educ. Ass'n,
   629 F.3d 992 (9th Cir. 2010) ........................................................................6

Fla. Power & Light Co. v. Lorion,
   470 U.S. 729 (1985) ............................................................................... ii, 14

Hughes v. Oklahoma,
   441 U.S. 322 (1979) ......................................................................................8

Indian Path Med. Ctr. v. Leavitt,
   No. 04-CV-1000, 2006 WL 1663453 (D.D.C. June 9, 2006) .......................14

Kearns v. Cuomo,
   415 F. Supp. 3d 319 (W.D.N.Y. 2019), aff'd, 981 F.3d 200 (2d Cir. 2020)...................7

Lujan v. Defs. of Wildlife,
   504 U.S. 555 (1992) ............................................................. ii, 3, 4, 9, 10, 13

Novak v. United States,
   795 F.3d 1012 (9th Cir. 2015) ...............................................................3, 4, 13

Nuclear Info. & Resource Serv. v. NRC,
   457 F.3d 941 (9th Cir. 2006) .............................................................. ii, 4, 9, 14

Pub. Emps. for Envtl. Responsibility v. Bernhardt,
   No. 18-CV-1547, 2020 WL 601783 (D.D.C. Feb. 7, 2020)....................ii, 5, 6

Shwarz v. United States,
   234 F.3d 428 (9th Cir. 2000) ....................................................................3, 9

Sierra Club v. Morton,
  405 U.S. 727 (1972) ..................................................................9, 10, 12

Simon v. E. Ky. Welfare Rights Org.,
  426 U.S. 26 (1976) ...............................................................................13

Smith v. Pac. Props. & Dev. Corp.,
  358 F.3d 1097 (9th Cir. 2004) ...............................................................4

Spokeo, Inc. v. Robins,
  136 S. Ct. 1540 (2016) ............................................................... ii, 3, 4

Thompson v. McCombe,
  99 F.3d 352 (9th Cir. 1996) ...................................................................3

Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,
  454 U.S. 464 (1982) .............................................................................12

Warren v. Fox Family Worldwide, Inc.,
  328 F.3d 1136 (9th Cir. 2003) ...........................................................3, 9

Warth v. Seldin,
  422 U.S. 490 (1975) ...............................................................................3

White v. Lee,
  227 F.3d 1214 (9th Cir. 2000) ...........................................................3, 8

Whitmore v. Arkansas,
  495 U.S. 149 (1990) ...............................................................................6

**Statutes**

5 U.S.C. § 706 ...........................................................................................3

Ind. Code § 14-22-1-1 ..............................................................................8

Ky. Rev. Stat. Ann. § 150.370 ..................................................................8

Mass. Gen. Laws Ann. ch. 131, § 5 .........................................................8

Me. Stat. tit. 12, § 10951 ..........................................................................8

Mo. Ann. Stat. § 252.040 ..........................................................................8

Ohio Rev. Code Ann. § 1531.02 ...............................................................8

Utah Code Ann. § 23-20-3 .........................................................................8

Vt. Stat. Ann. tit., § 4081 ..........................................................................8

Wash. Rev. Code § 77.15.120 ...................................................................9

**Rules**

39 Fed. Reg. 1171 (Jan. 4, 1974) ..............................................................1

43 Fed. Reg. 9607 (Mar. 9, 1978) .............................................................1

84 Fed. Reg. 9648 (Mar. 15, 2019) ...........................................................2

85 Fed. Reg. 69778 (Nov. 3, 2020)...................................................................1, 2, 8

Fed. R. Civ. P. 12(b)(1)...................................................................................1, 3

The National Rifle Association of America ("NRA") and Safari Club International ("SCI") move to dismiss Plaintiffs' Complaint (Dkt. 1) for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  The Complaint should be dismissed because Plaintiffs lack standing to assert their claims.  NRA and SCI respectfully request that the Court grant this motion and dismiss the Compliant.

<strong>STATEMENT OF THE ISSUES TO BE DECIDED</strong>

1. Whether Plaintiffs have carried their burden of clearly alleging constitutional standing; and specifically, whether Plaintiffs have established a (i) concrete and particularized, and (ii) actual or imminent injury in fact?

2. Whether Plaintiffs have carried their burden of clearly alleging constitutional standing; and specifically, whether Plaintiffs have established that a favorable ruling from this Court can redress their particularized injury in fact?

<strong>STATEMENT OF RELEVANT FACTS</strong>

The gray wolf (*Canis lupus*) in the United States is an Endangered Species Act ("ESA") success story.[1]  Gray wolves were nearly eradicated during the 19th and early- to mid-20th centuries as a result of human persecution and government-funded wolf-extermination efforts. 85 Fed. Reg. 69778, 69788 (Nov. 3, 2020) ("Delisting Rule").  Only about 1,040 gray wolves remained south of the Canadian border in Minnesota and Isle Royale, Michigan when the subspecies was first listed under the ESA in 1974.  *Id.*; 39 Fed. Reg. 1171 (Jan. 4, 1974).  In 1978, the U.S. Fish and Wildlife Service ("FWS") reclassified gray wolves in the lower 48 U.S. states as endangered, except for gray wolves in Minnesota, which had increased to over 1,200 wolves and were listed as threatened.  85 Fed. Reg. at 69788; 43 Fed. Reg. 9607 (Mar. 9, 1978).

The FWS and its state, tribal, and local partners invested heavily in recovery of gray wolf populations in the Western Great Lakes ("WGL") states of Michigan, Minnesota, and Wisconsin.

---

[1] U.S. Fish and Wildlife Service, Press Release (Oct. 29, 2020), https://www.fws.gov/news/ShowNews.cfm?ref=trump-administration-returns-management-and-protection-of-gray-wolves-to-&_ID=36801.

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-344-JSW

Similarly, the FWS and its state, tribal, and local partners implemented a recovery plan in the Northern Rocky Mountains ("NRM") states of Idaho, Montana, and Wyoming[2]—including the release and reintroduction of gray wolves into portions of the NRM.  *See, e.g.*, 85 Fed. Reg. at 69779–80.  These efforts paid off.  By the mid-1990s, the WGL wolf populations had far exceeded recovery plan criteria.  *Id.* at 69791.  The NRM wolf populations were not far behind— they exceeded recovery goals by 2002.  *Id.* at 69792.

Based on this success, the FWS has repeatedly sought to reduce or remove ESA protections for these wolves.  The FWS first reclassified populations of wolves from endangered to threatened in a 2003 rule, which was vacated by two district courts.  85 Fed. Reg. at 69781, Table 1.  In 2007, 2009, and again in 2011, the FWS again tried to delist the WGL wolves.  *See id.*  Those rules were also vacated by federal courts.  *Id.*  In 2009, the FWS removed NRM wolf populations in Idaho, Montana, and portions of Oregon, Washington, and Utah from the ESA list; although that rule was vacated by a district court, Congress legislatively reinstated the delisting.  *Id.*  In 2011, the FWS also delisted the NRM wolf population in Wyoming.  The D.C. Circuit upheld that rule in 2017.  *Id.*

On March 15, 2019, the FWS proposed to remove ESA protections for all remaining gray wolf populations (except Mexican wolves).  84 Fed. Reg. 9648.  The FWS opened a 60-day comment period on the proposal, and then re-opened the comment period for another 60 days due to the amount of public interest.  85 Fed. Reg. at 69780.  The FWS received tens of thousands of comments, including comments from a number of state government agencies.  At least four states (California, Michigan, Minnesota, and Oregon) opposed the proposed delisting. *See* 85 Fed. Reg. at 69856–60 (responding to state comments); Compl., Dkt. 1, ¶ 30.

On November 3, 2020, the FWS published the final rule removing the gray wolf, except for the Mexican wolf, from the ESA lists of threatened and endangered species.  85 Fed. Reg. at 69778.  The Delisting Rule went into effect on January 4, 2021.  *Id.*  Plaintiffs sued the FWS

---

[2] The NRM also includes the eastern one-third of each of Washington and Oregon and a small part of north-central Utah.

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-344-JSW

2

after the Delisting Rule went into effect.  *See* Dkt. 1.  Plaintiffs claim the delisting violates the

Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), and the ESA.

**ARGUMENT:  PLAINTIFFS HAVE NOT CLEARLY ALLEGED THEIR STANDING**

The Complaint should be dismissed for lack of jurisdiction under Federal Rule of Civil

Procedure 12(b)(1).  The plaintiff bears the burden of proving the existence of the court's subject

matter jurisdiction.  *E.g.*, *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  The

complaint must include "allegations [that] 'permit the court to infer more than the mere

possibility of'" jurisdiction.  *Ctr. for Bio. Diversity v. Bernhardt*, 946 F.3d 553, 560 (9th Cir.

2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  In reviewing the complaint, the

court accepts the well-pleaded factual allegations as true and construes those allegations in the

light most favorable to the plaintiff.  *Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir.

2015).  However, the court does not "assume the truth of legal conclusions merely because they

are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d

1136, 1139 (9th Cir. 2003) (citations omitted).  Nor must the court accept as true factual

allegations contradicted by judicially noticeable facts.  *Shwarz v. United States*, 234 F.3d 428,

435 (9th Cir. 2000).  Rather, when a defendant contests the truth of the plaintiff's allegations, the

court may consider "matters of public record without having to convert the motion into one for

summary judgment."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citations omitted).

This Court lacks jurisdiction because Plaintiffs fail to establish their standing to challenge

the Delisting Rule.  "In essence the question of standing is whether the litigant is entitled to have

the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490,

498 (1975). The "'irreducible constitutional minimum'" to establish standing requires that (1) the

plaintiff suffer an injury in fact, which is (2) causally connected to the defendant's challenged

conduct, and (3) redressable by a favorable court decision.  *E.g.*, *Spokeo, Inc. v. Robins*, 136 S.

Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  The

plaintiff bears the burden of establishing these elements.  *Id.*  It is not a light burden.  Standing is

"substantially more difficult to establish" where, as here, the "plaintiff is not himself the object

of the government action or inaction he challenges." *Lujan*, 504 U.S. at 562. "More particular

facts are needed" than if the plaintiff were itself the regulated party, *Novak*, 795 F.3d at 1019,

and the plaintiff must "clearly" allege facts for each element of standing, *Spokeo*, 136 S. Ct. at

1547. Organizational plaintiffs, like those here, must clearly allege facts to demonstrate that at

least one member would have standing to sue in his or her own right. *See Nuclear Info. &*

*Resource Serv. v. NRC*, 457 F.3d 941, 950 (9th Cir. 2006).[3]

The Complaint does not even suggest a mere possibility of jurisdiction, because it does

not establish the first and third elements of standing. Plaintiffs do not clearly allege injury in

fact, because they do not clearly allege that the removal of ESA protections will detrimentally

impact the gray wolf. In addition, Plaintiffs cannot obtain redress for their claimed injury. They

cannot force the FWS to take any specific actions to recover gray wolves, and the relief the Court

can grant under the APA does not redress Plaintiffs' alleged injury.

### A. Plaintiffs have not established that they suffered an injury in fact.

An injury in fact is the "invasion of a legally protected interest" that is "(a) concrete and

particularized," and "(b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at

560. A concrete injury is "real" and not "abstract." *Spokeo*, 136 S. Ct. at 1548. A particularized

injury "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

An imminent injury in fact cannot be "speculative"; rather, it "'must be ***certainly impending*** …

[and] allegations of ***possible*** future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*,

---

[3] An organization can claim standing on behalf of itself, but must demonstrate both "frustration of its organizational mission," ***and*** "diversion of its resources to combat the particular [regulation] in question." *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). An organization "going about its business as usual" does not establish these requirements. *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154–55 (9th Cir. 2019). This Court recently held that an environmental organization whose alleged "additional expenditures" were actually "consistent with [its] typical activities" failed to demonstrate standing. *Ctr. for Bio. Diversity v. Bernhardt*, No. 19-CV-5206, 2020 WL 4188091, *5 (N.D. Cal. May 18, 2020). Likewise, the Complaint does not demonstrate a diversion of resources from any Plaintiff—including Plaintiff Center for Biological Diversity, because advocacy and conservation activities on behalf of gray wolves is part of the mission and business as usual of each Plaintiff. *See* Dkt. 1, ¶¶ 10(A)–(F), 11.

568 U.S. 398, 409 (2013) (citation omitted).  Plaintiffs fail to establish that they are affected by the FWS' allegedly unlawful conduct in a concrete, particularized, and imminent way.

        1.   <u>The Complaint does not clearly allege a concrete and imminent injury in fact from delisting.</u>

The Complaint identifies aesthetic, recreational, and other interests of Plaintiffs' members in viewing gray wolves and recreating in areas near wolves, primarily in the Western United States.  *E.g.*, Dkt. 1, ¶¶ 10(A)–(E), 12–14.  But it fails to explain how the delisting results in concrete harm to these interests.  It not enough for Plaintiffs to ***assume*** that removal of ESA protections for the gray wolf, by itself, causes injury.  *E.g.*, *id.* ¶ 12 ("Members of the plaintiff groups seek to view wolves and signs of wolf presence in the wild, and federal defendants' challenged action will reduce their opportunity to do so …"); ¶ 13 ("The decision to eliminate ESA protections for gray wolves will cause ecological harm to the ecosystems throughout the nation where wolves are now found.  The legal violations alleged in this complaint cause direct injury to the aesthetic, conservation, economic, recreational, scientific, educational, and wildlife preservation interests of the plaintiff organizations and their members."); ¶ 14.  Rather, a plaintiff must provide concrete, imminent reasons why and how the delisting will damage their interests in enjoying gray wolves in the wild.  *E.g.*, *Pub. Emps. for Envtl. Responsibility v. Bernhardt*, No. 18-CV-1547, 2020 WL 601783, *4 (D.D.C. Feb. 7, 2020) ("*PEER*").

In *PEER*, the court rejected similar, conclusory allegations to those raised by Plaintiffs.  The *PEER* plaintiffs challenged removal of Louisiana black bears from the ESA list of threatened species.  *Id.* at *1.  They claimed the delisting harmed their abilities to observe and study the bears.  *Id.* at *4.  But they failed to provide "any evidence whatsoever demonstrating that delisting will lead inexorably to fewer [bears] or make it harder to observe [bears] in the wild."  *Id.*  As the court pointed out, "[i]t is not self-evident what the result of delisting will be for [bear] population levels.  The Delisting Rule itself notes that the main [bear] subpopulations

'are stable or increasing,' and that the probability of long-term persistence is 99.6%." *Id.*[4]

Similarly, the Complaint fails to include allegations demonstrating why and how delisting will detrimentally impact their interests in observing and recreating with gray wolves. *E.g.*, Dkt. 1, ¶¶ 10–14, 61–66. As in *PEER*, the impact of the delisting on wolf populations is not self-evident. Plaintiffs concede that gray wolves are recovering in the WGL and NRM and have begun to recover in other parts of the country. *Id.* ¶ 5–6, 24–25. The Delisting Rule concludes that wolf populations are stable or increasing and will remain "well above the recovery criteria" under state management. 85 Fed. Reg. at 69884. Neither Plaintiffs nor this Court can assume that delisting will result in decreased wolf populations or decreased opportunities to observe wolves in the wild.[5] *E.g.*, *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990) ("The litigant must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements. A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."). It is Plaintiffs' burden to clearly allege the element of ***injury***, not just their ***interest*** in the species at issue. Their Complaint should be dismissed because they do not carry this burden.

### 2.   Plaintiffs' injury is too speculative to be actual or imminent.

Plaintiffs also fail to allege an actual or imminent injury; they only identify conditions that may ***potentially*** cause an injury. Plaintiffs' Third Claim for Relief asserts that "[i]f delisting is finalized, each individual state would handle wolf management. While there are states that

---

[4] As a factual matter, previously delisted species have been stable or grown in population after removal of ESA protections. For example, NRM gray wolves "continue[] to hold steady," FWS, Testimony before House Subcommittee on Oversight and Investigations, https://www.doi.gov/ocl/management-wolves; and bald eagle populations continued to increase, *e.g.*, https://www.fws.gov/migratorybirds/pdf/management/ EagleRuleRevisions-StatusReport.pdf. This Court may take judicial notice of information posted on an agency's official website. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

[5] Standing "is not dispensed in gross." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006). That plaintiffs in past wolf delisting cases may have had standing has no bearing on whether Plaintiffs have carried their constitutional burden. Both the factual and legal situation for gray wolves have changed since prior cases were decided.

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-344-JSW

have welcomed wolves, some are overtly hostile to wolf recovery, some will regulate as game animals and allow hunting and trapping, and some simply have no plans at all." Dkt. 1, ¶ 61; *see also id.* ¶ 63 (alleging that states "would likely allow regulated hunting and trapping … upon removal of federal protections"). But this fails to allege any connection between injury to Plaintiffs' concrete, actual or imminent interests in observing wolves and the Delisting Rule. They assume a legal and factual situation with respect to state management of wolves that will, potentially, allow for an injury to occur in some amorphous way. That attenuated pleading is too speculative to satisfy the requirements of Article III standing. *Clapper*, 568 U.S. at 410–11.

In *Clapper*, the Supreme Court rejected the plaintiffs' claim that their communications would be intercepted under the challenged statute. The Court found this too "speculative" to satisfy the requirement of a "certainly impending" injury. *Id.* at 411. According to the Court, the statute under review "at most authorize[d]—but d[id] not mandate or direct—the surveillance that [the plaintiffs'] fear," rendering the plaintiffs' allegations "necessarily conjectural." *Id.* at 412 (further concluding that, "[s]imply put, respondents can only speculate as to how the Attorney General and the Director of National Intelligence will exercise their discretion in determining which communications to target"); *accord Kearns v. Cuomo*, 415 F. Supp. 3d 319, 335 (W.D.N.Y. 2019), *aff'd*, 981 F.3d 200 (2d Cir. 2020) (holding that where a state official had multiple options for administering challenged law, the official's ability to act in a manner contrary to the plaintiff's interests "is a far cry from the concrete and particularized injury necessary to establishing standing").

As in *Clapper*, Plaintiffs' allegations are necessarily conjectural. That states have options in how they manage gray wolves post-delisting does ***not*** mean that states will lethally manage the wolves or reduce existing populations. Nor does it mean that Plaintiffs' members will have less opportunity to observe wolves in the wild. The Complaint alleges ***only*** a legal situation in which ESA protections for gray wolves have been reduced. It never takes the necessary step of alleging a concrete and imminent injury from this reduction of ESA protections.

Moreover, the allegations in the Third Claim for Relief do not support Plaintiffs' standing because they are contradicted by judicially-noticeable facts, and the Court need not—and should not—accept these allegations as true.  *E.g.*, *White*, 227 F.3d at 1242; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (holding it "appropriate to take judicial notice" of information "made publicly available by government entities").  Plaintiffs' assertion that most states "have no protections in place for gray wolves" (Dkt. 1, ¶ 62), is false.  The first principle of natural resource law is that wildlife belongs to the people of each state.  Wildlife is reserved and protected for the people, and unregulated killing is prohibited.  *See, e.g.*, *Hughes v. Oklahoma*, 441 U.S. 322, 324–25 (1979); *see also, e.g.*, Ind. Code § 14-22-1-1; Ky. Rev. Stat. Ann. § 150.370; Mass. Gen. Laws Ann. ch. 131, § 5; Me. Stat. tit. 12, § 10951; Mo. Ann. Stat. § 252.040; Ohio Rev. Code Ann. § 1531.02; Utah Code Ann. § 23-20-3; Vt. Stat. Ann. tit., § 4081.  Moreover, these states do not have resident wolf populations that can be observed—or harvested.  85 Fed. Reg. at 69789 (noting gray wolf dispersers, but not residents, have been documented in Indiana, Massachusetts, Missouri, Utah, and Vermont; no individual wolves have been documented in Kentucky, Maine, or Ohio).  Plaintiffs suffer no aesthetic or recreational injury from not being able to observe wolves ***where wolf populations do not exist***.

Plaintiffs also allege that "[a] number of states … would ***likely*** allow regulated hunting and trapping" following delisting.  Dkt. 1 ¶ 63 (emphasis added).  That assertion is also contradicted for the only states with resident wolf populations: Michigan, Minnesota, Oregon, and Washington.  Michigan has no current law or regulation establishing a season; its government leaders opposed the Delisting Rule, and it is highly ***unlikely*** that they will open any wolf season in the foreseeable future.  85 Fed. Reg. at 69856–60; Compl., Dkt. 1, ¶ 30.[6]  Under Minnesota's wolf management plan, the state wildlife agency will not open a wolf season for at

---

[6] Michigan's Wolf Management Plan does not provide for immediate harvest of gray wolves following delisting, see Mich. Dep't of Natural Res., Michigan Wolf Management Plan, available at https://www.michigan.gov/documents/dnr/wolf_management_plan_492568_7.pdf.

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-344-JSW

8

least five years after delisting.[7]  Oregon's wolf management plan and regulations do not authorize a hunting season or "take quotas" for gray wolves, despite the species being removed from the state list of endangered species in 2015 after achieving and surpassing its recovery targets.[8]  Last, in Washington, the gray wolf is still listed as an endangered species and is protected from harassment, hunting or killing.  Wash. Rev. Code § 77.15.120.  In short, this Court need not accept Plaintiffs' legal inferences or unsupported factual assumptions as true. *Warren*, 328 F.3d at 1139; *Shwarz*, 234 F.3d at 435.  Plaintiffs do not demonstrate that any specific state actions will cause an imminent injury to their interests.

### 3. Plaintiffs' injury does not meet the geographic nexus requirement.

Plaintiffs also fail to establish a concrete and particularized injury from a diminished opportunity to enjoy gray wolves in areas where their members recreate.  "[A] plaintiff claiming injury from environmental damage must the use the area affected by the challenged activity and not an area roughly 'in the vicinity' of it."  *Lujan*, 504 U.S. at 565–66.  Thus, for an injury in fact to be "particularized," the plaintiff must be a "person[ ] for whom the aesthetic and recreational values of the area will be lessened by the challenged activity."  *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972).  The Ninth Circuit frames this requirement as a "'geographic nexus' between the individual asserting the claim and the location suffering an environmental impact."  *Nuclear Info. & Res. Serv.*, 457 F.3d at 950 (quoting *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 938 (9th Cir. 2005)).

In *Sierra Club*, Plaintiff Sierra Club alleged that a challenged development would detrimentally impact the environment and wildlife of Mineral King Valley and "impair [the plaintiff's] enjoyment of the park for future."  405 U.S. at 734.  The Supreme Court recognized Plaintiff's "cognizable interest" in the aesthetic and recreational values of the Valley.  However,

---

[7] *See* Minn. Dep't of Natural Res., Minnesota Wolf Management Plan, available at https://files.dnr.state.mn.us/natural_resources/animals/mammals/wolves/wolfplan.pdf.

[8] *See* Rules implementing the Oregon Wolf Conservation and Management Plan, available at https://secure.sos.state.or.us/oard/viewSingleRule.action?ruleVrsnRsn=258797.

according to the Court, "the 'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself ***among the injured***."  *Id.* (emphasis added).  The Court held that Plaintiff failed to establish that its members' interest would be injured by the development so as to confer standing:

> The impact of the proposed changes in the environment of Mineral King will not fall indiscriminately upon every citizen.  The alleged injury will be felt directly only by those who use Mineral King and Sequoia National Park, and for whom the aesthetic and recreational values of the area will be lessened by the highway and ski resort. … The Sierra Club failed to allege that it or its members would be affected in any of their activities or pastimes by the Disney development. ***Nowhere*** in the pleadings or affidavits did the Club state that its members use Mineral King for any purpose, much less that they use it in any way that would be ***significantly affected by the proposed actions*** of the respondents.

*Id.* at 734–35 (emphasis added).

Plaintiffs here primarily allege aesthetic, recreational, and other interests in observing gray wolves in the Western U.S., particularly in California, Oregon, Washington, Colorado, Wyoming, and Alaska.  *E.g.*, Dkt. 1, ¶ 10(A) (Defenders of Wildlife members working on wolf surveys in Colorado), ¶ 10(B) (Center for Biological Diversity member photographs wolves in California; another visits Mt. Hood National Park in Oregon to see wolves); ¶ 10(C) (Sierra Club member owns property where a wolf pack in Washington "used to roam"; another member travels to Yellowstone and Denali National Parks to observe wolves); ¶ 10(D) (Oregon Wild staff member hikes in forests where wolves "are known to live" in eastern and southern Oregon); ¶ 10(E) (National Parks Conservation Association member observes wolves on property in northwest Colorado).  As in *Sierra Club*, Plaintiffs have shown cognizable interests in gray wolves in general.  But, as in *Sierra Club*, Plaintiffs do not satisfy the rest of the test for injury in fact.  They do not allege that they are among the persons using ***specific*** areas where the opportunity to observe wolves will decline as a result of state actions that will negatively impact wolf populations, which states could not do prior to the delisting.  *E.g.*, *Sierra Club*, 405 U.S. at 734–35; *Lujan*, 504 U.S. at 561.  The Complaint fails this test for the following five reasons.

*First*, Plaintiffs' allegations incorporate broad areas, including entire states.  Wolves in some of these states (Oregon, Washington, Wyoming, Alaska) are partially or fully delisted already.  Plaintiffs cannot show that they are injured by the Delisting Rule, if the rule did not delist wolves in areas where Plaintiffs' members recreate.

*Second*, the Complaint challenges the actions of states where Plaintiffs have not identified any members at all.  For example, the Complaint points to Utah and South Dakota as places where wolves can be captured or killed as "varmints."  Dkt. 1, ¶ 63.  Yet it does not allege that any of Plaintiff organizations are based in Utah or South Dakota, have members that observe wolves in Utah or South Dakota, or have members who specifically use and observe wolves in the areas affected by control activities.  *See id.* at 10(A)–(F).

*Third*, the Complaint alleges that "[s]everal of these states have committed to managing wolves for an aggressive population decline following delisting," *id.* ¶ 64, but then fails to identify which states, where those states will manage wolves to cause population declines, and how those alleged population declines will impact the ability of Plaintiffs' members to view gray wolves in the wild.

*Fourth*, although the Complaint alleges that Plaintiffs "are harmed by the hunting and trapping seasons that will take place in the Midwest states," *id.* ¶ 11, the Complaint only identifies one state that will actually have a wolf hunting season: Wisconsin.  *Id.* ¶ 63.  And, again, it never alleges that any of Plaintiff organizations is based in Wisconsin or focuses its efforts on Wisconsin or Plaintiffs have any members living in Wisconsin or who plan to view wolves in Wisconsin, particularly in areas where wolves were or will be hunted.  *Id.* ¶ 10(A)–(F).

The Complaint points to only one member, Michigan resident Warren (¶ 10(F)), who actually lives and plans to recreate in the Midwest.  Ms. Warren allegedly visits wolf habitat in Michigan, Minnesota, Wisconsin, ***and*** other regions; she "has observed wild wolves in three U.S. states and Canada."  *Id.*  This allegation is far too generalized to establish a geographic nexus.  It does not connect Ms. Warren's widespread travels with a specific area where hunting will occur,

now that wolves are delisted.[9]  Nor does this allegation establish how, as a result of geographic proximity, Ms. Warren has experienced or will imminently experience a diminished opportunity to observe wolves in the specific area affected by harvest.  As in *Sierra Club*, Plaintiffs here cannot gloss over the requirements of standing.  Their members must use an area significantly affected by the Delisting Rule; if they are not "among the injured" from the FWS' challenged activity, then they lack standing.  *Sierra Club*, 405 U.S. at 735; *see also Ashley Creek Phosphate*, 420 F.3d at 938–39 (finding plaintiff did not establish a geographic nexus given that its phosphate leases were located 250 miles away in a different state and it failed to allege recreational use of the affected area).

**Last**, Plaintiffs also do not establish that wolf populations in Wisconsin or the other WGL states will decline as a result of the delisting.  In fact, Plaintiffs concede that the WGL wolf populations, including wolves in Wisconsin, have recovered.  Dkt. 1, ¶¶ 24–25.  Plaintiffs do not establish a concrete, particularized, and imminent injury in fact from state actions affecting wolves whose recovery is unquestioned.  At most, they disagree with the FWS' determinations that gray wolves should be removed from the ESA lists.  That generalized grievance, even if grounded on alleged violations of the ESA, is too speculative and non-particularized to support standing.  *E.g.*, Dkt. 1, ¶ 10(E) (one of Plaintiffs' members "is concerned personally and professionally about the impact that removal of ESA protections will have on the health of gray wolf population in the lower-48 states"); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 483 (1982) ("assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning").

In sum, in the areas where Plaintiffs experience wolves, they have not alleged and cannot plausibly allege any detrimental impact from the Delisting Rule to support an injury in fact.  In the one state where wolves have or imminently will be harvested, Plaintiffs have alleged neither

---

[9] From this vague allegation, it is not clear whether Ms. Warren observed wolves in the WGL, or in three different U.S. states.

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-344-JSW

a geographic nexus, nor a detrimental impact to the long-term recovery of healthy wolf populations.  Plaintiffs have not met their burden of establishing the first element of standing. Their Complaint should be dismissed.  *Lujan*, 504. U.S. at 561.

**B.     A favorable Court order will not redress Plaintiffs' injury.**

Plaintiffs also fail to clearly allege that it is "'likely,' as opposed to merely speculative, that [their alleged] injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43 (1976)).  Plaintiffs must offer "much more" to demonstrate the redressability element, because they are not "an object of the action … at issue." *Id.* at 562.  To carry this burden, Plaintiffs must "show … a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Novak*, 795 F.3d at 1019–20 (internal quotations and citations omitted).  Plaintiffs cannot establish redressability in this case, because the only relief available to this Court would not redress Plaintiffs' identified injury.

As explained above, Plaintiffs do not tie their interests in observing wolves to any specific decline in wolf numbers or wolf observation opportunities as a result of any imminent actions by the states or third parties like hunters.  Their real objection focuses on the FWS' failure to recover wolves across the U.S.  It is that failure which allegedly prevents further wolf viewing opportunities and prevents Plaintiffs from achieving their asserted policy goals.  *E.g.*, Dkt. 1, ¶¶ 4–6, 34–36.  Yet despite this broad injury, which is based on the actions that the FWS should have taken to recover gray wolves, Plaintiffs request very narrow relief: that the Court vacate the Delisting Rule and reinstate the prior listing.  *Id.*, p. 24.

But even if the Court grants this relief and vacates the Delisting Rule, this Court cannot force the FWS to undertake any particular recovery program for wolves outside the WGL.  This Court lacks authority to require the FWS act "in any particular fashion" with respect to the recovery of gray wolves; "[r]ather, because this court acts as an appellate court in administrative review cases of this type, the most it is empowered to do is to remand and order the Secretary to

take further action consistent with the law." *Indian Path Med. Ctr. v. Leavitt*, No. 04-CV-1000, 2006 WL 1663453, *4 (D.D.C. June 9, 2006).  Put differently, in an APA review case, "[t]he task of the reviewing court is to apply the appropriate APA standard of review … If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, … the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

Given the Court's limited options, Plaintiffs cannot obtain the redress of their substantive injury.  All they can do is seek further investigation or explanation from the FWS.  A plaintiff who fails to establish any likelihood that remand will directly redress its claimed injury lacks standing.  *Nuclear Info. & Res. Serv.*, 457 F.3d at 955.  And for this additional reason, the Complaint should be dismissed.

**CONCLUSION**

For the reasons stated above, the Complaint does not meet the requirements for establishing Article III standing.  Plaintiffs have failed to clearly allege an injury in fact, redressability, or standing as organizations.  Because Plaintiffs have not met their burden, NRA and SCI respectfully request that this Court dismiss the case for lack of jurisdiction.

Dated this 2nd day of April, 2021.

/s/ Stanford H. Atwood, Jr.
Stanford H. Atwood, Jr.
CA Bar No. 37362
Atwood & Associates
750 University Avenue, Suite 130
Los Gatos, California 95032
Tel:     408-395-5503
Fax:    408-395-5519
stanford@atwoodlaw.net

*Attorney for Defendant-Intervenor-Applicants National Rifle Association of America and Safari Club International*

NRA and SCI Memo in Support of Motion to Dismiss, Case No. 4:21-cv-344-JSW

14

Michael T. Jean, MI Bar No. P76010*
Hadan W. Hatch, UT Bar No. 17671*
National Rifle Association of America
11250 Waples Mill Road
Fairfax, Virginia 22030
Tel:  703-267-1161
Fax:  703-267-3976
mjean@nrahq.org
hhatch@nrahq.org

*Attorneys for Defendant-Intervenor-
Applicant National Rifle Association of
America*

*Motion for pro hac vice forthcoming*

Jeremy E. Clare, D.C. Bar No. 1015688*
Regina A. Lennox, D.C. Bar No. 1671299*
Safari Club International
501 2nd Street N.E.
Washington, D.C. 20002
Tel:     202-543-8733
Fax:     202-403-2244
jclare@safariclub.org
rlennox@safariclub.org

*Attorneys for Defendant-Intervenor-
Applicant Safari Club International*

*Motion for pro hac vice forthcoming*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.

/s/ Stanford H, Atwood, Jr.
Stanford H. Atwood, Jr.