KRISTEN L. BOYLES (CSBA #158450)
MICHAEL MAYER (WSBA #32135)
*[Admitted Pro Hac Vice]*
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA  98104
(206) 343-7340
kboyles@earthjustice.org
mmayer@earthjustice.org

Timothy J. Preso (MSBA #5255)
*[Admitted Pro Hac Vice]*
EARTHJUSTICE
313 East Main St.
P.O. Box 4743
Bozeman, MT 59772-4743
(406) 586-9699
tpreso@earthjustice.org

GREGORY C. LOARIE (CSBA #215859)
EARTHJUSTICE
50 California Street, Suite 500
San Francisco, CA  94111
(415) 217-2000
gloarie@earthjustice.org

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DEFENDERS OF WILDLIFE *et al.*, | Case No. 3:21-cv-344-JSW |
| Plaintiffs, | Related Cases:    4:21-cv-349-JSW |
| v. | 4:21-cv-561-JSW |
| U.S. FISH AND WILDLIFE SERVICE *et al.*, | FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| Defendants, | |
| and | (Endangered Species Act, 16 U.S.C. § 1531 *et seq.;* Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*) |
| NATIONAL RIFLE ASS'N *et al.*, | |
| Defendant-Intervenors. | |

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 1 -

Plaintiffs Defenders of Wildlife *et al.* file this First Amended Complaint as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1)(B), in response to Defendant-Intervenors National Rifle Association of America *et al.* Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), filed on May 6, 2021. ECF 39. The amendments and attached exhibits provide specific factual allegations, including identified members whose particular interests have suffered or will suffer harm and the risk of harm. The amendments summarize the interests of individual members of each of the Plaintiff groups in the protection of gray wolves and their geographic habitat, as well as the injury and risk of injury to Plaintiff groups and their members from the removal of federal protections from gray wolves. The full declarations of the individual members are attached to the complaint as Exhibits 2–16 and are incorporated by reference. For the convenience of the Court and other parties, Plaintiffs have kept the paragraph numbers the same as in the Complaint, ECF 1 (Jan. 14, 2021); paragraphs 7, 10–15, 24, 27, 61–64, and the Prayer for Relief contain amended language.

## INTRODUCTION

1. This case challenges the decision of the U.S. Fish and Wildlife Service ("FWS") to delist almost all gray wolves in the lower-48 United States, despite significant threats to the wolves' survival and their nascent recovery. "Endangered and Threatened Wildlife and Plants; Removal of the Gray Wolf (*Canis lupus*) From the List of Endangered and Threatened Wildlife." 85 Fed. Reg. 69,778 (Nov. 3, 2020) ("Delisting Rule").

2. Historically, gray wolves were present across nearly all of North America. For decades, however, gray wolves in the United States were subject to extensive and concerted extermination campaigns. Wolves were hunted, trapped, and poisoned – at times with the funding and approval of the FWS and its predecessor—until by 1967 there were fewer than

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA 98104-1711*
*(206) 343-7340*

1,000 gray wolves remaining, confined to a small area of northeastern Minnesota along with an

isolated population on Isle Royale National Park in Lake Superior.

3. Gray wolves were among the first species to be listed by the Secretary of the

Interior as endangered when, alarmed by the pace of species' decline, Congress in 1973 enacted

the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*—"the most comprehensive

legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley*

*Auth. v. Hill*, 437 U.S. 153, 180 (1978).

4. Under protection of the ESA from killing by humans, gray wolves began to

reoccupy their native landscapes. As a top predator and a "keystone" species, the wolf's return

can help restore a more natural balance and support healthy ecosystems. In the northern

Rockies, for instance, the reintroduction of wolves has improved the riparian vegetation along

streams, as elk no longer overgraze trees and shrubs in valley bottoms. However, such beneficial

impacts of the wolf's return have been limited to date because wolf recovery is absent from a

vast area of the species' historic range that still offer suitable habitat, and even in many areas

where wolves are present, their populations are too small and tenuous to perform their full

ecological role in our natural environment.

5. Nevertheless, FWS has for close to two decades attempted to remove ESA

protections for gray wolves. Beginning in 2003, FWS has proposed a series of downlisting and

delisting rules that federal courts have consistently rejected as unlawful. FWS has repeatedly

sought to remove ESA protections from gray wolves by artificially dividing the population into

smaller segments in order to declare that each one has recovered. Federal courts have struck

down such rules for not only ignoring the vast amount of available wolf habitat still largely

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 3 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1  unoccupied, but also for purposefully leaving out "remnant" populations outside of the agency's

2  chosen delisting area.  *See* 85 Fed. Reg. at 69,780–81, Table 1.

3        6.     Plaintiffs in this case challenge FWS's latest decision to eliminate all federal

4  protections for gray wolves.  Gray wolves still meet the ESA's definition of an endangered

5  species, one that is "in danger of extinction throughout all or a significant portion of its range."

6  16 U.S.C. § 1532(6).  FWS once again attempts to justify delisting by myopically focusing on

7  wolves in a particular, limited geography (in this case, the Midwest) in order to justify delisting

8  across the entire country.  In doing so, the final rule selectively combined populations, ignored

9  available historical wolf habitat, and disregarded relatively new wolf populations outside the

10  Midwest as "colonizers" unnecessary to the survival and recovery of wolves in the Midwest.

11  FWS's Delisting Rule does not satisfy the ESA requirements that FWS may delist only those

12  species that are fully recovered and protected by adequate regulatory mechanisms.  The Delisting

13  Rule ignores the best available science, is arbitrary, capricious, an abuse of discretion, and

14  contrary to law, and plaintiffs ask the Court to vacate and remand it.

15  JURISDICTION AND VENUE

16        7.     Plaintiffs bring this action pursuant to the ESA citizen suit provision, 16 U.S.C.

17  § 1540(g), which waives federal defendants' sovereign immunity.  As required by 16 U.S.C.

18  § 1540(g), plaintiffs provided federal defendants with notice of intent to sue on November 5,

19  2020 (attached as Exhibit 1).  This Court has jurisdiction over plaintiffs' claims pursuant to 28

20  U.S.C. § 1331 (federal question) and may issue a declaratory judgment and further relief

21  pursuant to 28 U.S.C. §§ 2201–02.  Plaintiffs' Article III standing to pursue this case is

22  demonstrated by the allegations below concerning Plaintiffs' members' interest in this

23  controversy and the declarations from Plaintiffs' members that are attached to this complaint.

24

25  FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 4 -

26

1    8.    Venue is properly vested in this Court under 28 U.S.C. § 1391(e) and 16 U.S.C.

2  § 1540(g)(3), as a number of the plaintiffs reside in this district, plaintiffs have members and

3  offices in California, and many of the consequences of the federal defendants' violations of the

4  law giving rise to the claims occurred or will occur in this district.

5                          INTRADISTRICT ASSIGNMENT

6    9.    This case is properly assigned to the San Francisco Division or the Oakland

7  Division under Civil L.R. 3-2(d) because many of the plaintiffs and their members are located in

8  counties within those districts.

9                                    PARTIES

10    10.    The plaintiffs in this action are:

11    A-1.    Defenders of Wildlife, a non-profit membership organization dedicated to the

12  protection of all native animals and plants in their natural communities, including our country's

13  most imperiled wildlife and habitat.  Headquartered in Washington, D.C., Defenders has seven

14  regional offices, with its California Regional Office located in Sacramento, California.

15  Defenders has more than 1.8 million members and on-line activists across the nation.  Over the

16  last four decades, Defenders has played a leading role in the recovery of wolves across the

17  country.  Defenders supported the Service's decision to list gray wolves as a single species under

18  the ESA in 1978.  Defenders subsequently assisted with the restoration of gray wolves to the

19  Rocky Mountains region and the desert southwest in the 1990s and hosted training workshops

20  and annual interagency wolf management conferences for state, tribal, and federal agencies in

21  that region from 1999 to 2013.  In 1998, the organization created the Defenders of Wildlife

22  Proactive Carnivore Conservation Fund, which assists ranchers and farmers with nonlethal,

23  proactive information and methods that help reduce or prevent livestock losses to wolves.  More

24  recently, Defenders has worked to recover wolves in California, Oregon, Washington, and the

25  FIRST AMENDED COMPLAINT FOR DECLARATORY
   AND INJUNCTIVE RELIEF - 5 -

26

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

southern Rocky Mountains.  Defenders submitted comments opposing the proposed gray wolf delisting.

A-2.    Defenders has individual members, including Ryan Schwarz, a professor of biology at Ft. Lewis College in Durango, Colorado, and Gary Skiba, a retired Colorado Parks and Wildlife biologist, who regularly visit, study, work, photograph, live on, or recreate on lands that are suitable gray wolf habitat.  Each of the members has specific intentions to continue to interact with gray wolves and their habitat frequently and on an ongoing basis, as set forth in the attached declarations.  Defenders' members and staff derive recreational, spiritual, professional, scientific, educational, and aesthetic benefits from their interactions with gray wolves and their habitat, and the harm to their interests will be remedied by returning federal ESA protections to the lower-48 population of gray wolves.

A-3.    Professor Schwarz has partnered with Defenders' staff in Colorado to conduct wolf field surveys and to evaluate the suitability of the landscape to support wolves.  Exh. 11, Schwarz Decl. ¶ 2.  Professor Schwarz teaches undergraduate courses that focus on wolves and the role wolves play in wilderness ecosystems, has developed a new course on conservation biology and management that will involve field work and wolves, and advises a current student on a wolf research project.  *Id.* at ¶ 6.  "Weakening federal protection harms my interest and reduces my chances of seeing and studying wild populations of gray wolves, for the personal and professional goals described above."  *Id.* at ¶ 7.  Mr. Skiba is a retired Colorado Parks and Wildlife biologist, he was the primary author of Colorado's wolf conservation plan, he has participated in field surveys for wolves in Colorado, and he has been active in the ongoing effort to restore wolves to the southern Rocky Mountains.  Exh. 13, Skiba Decl. ¶¶ 3–5.  Mr. Skiba has seen wolves tracks and heard wolf howls in northwest Colorado and central Wyoming.  *Id.* at ¶ 6.

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 6 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

Mr. Skiba is concerned about management of wolves devolving to the states, *id*. at ¶ 9, and notes that "delisting will harm my interests in seeing wolves and signs of their presence in natural systems. It will also harm my interests in their overall recovery, something I have dedicated much of my life's work to as an ecologist and biologist." *Id.* at ¶ 10.

B-1.    Center for Biological Diversity, a non-profit environmental organization dedicated to the protection of native species and their habitats through science, policy, and environmental law.  The Center is incorporated in California and headquartered in Tucson, Arizona, with field offices throughout the United States and Mexico, including in Oakland, California.  The Center has more than 1.7 million members and on-line activists.  The Center and its members are concerned with the conservation of imperiled species, including gray wolves, and with the effective implementation of the ESA.  By submitting administrative petitions, filing lawsuits, and other advocacy, the Center works to ensure the survival and recovery of wolves across the lower-48 States, including the Great Lakes, Northeast, Pacific Northwest, Southern Rocky Mountains, and elsewhere.  The Center submitted extensive comments on this proposed delisting rule and worked as part of a coalition that delivered over 1.5 million public comments to the Service opposing wolf delisting.  Of those, 650,000 comments came from members of the Center.

B-2.    The Center has individual members, including Joshua Able, Noah Greenwald, and Collette Adkins, who regularly visit, study, work, photograph, live on, or recreate on lands that are suitable gray wolf habitat.  Each of the members has specific intentions to continue to interact with gray wolves and their habitat frequently and on an ongoing basis, as set forth in the attached declarations.  The Center's members and staff derive recreational, spiritual, professional, scientific, educational, and aesthetic benefits from their interactions with gray

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 7 -

1  wolves and their habitat, and the harm to their interests will be remedied by returning federal

2  ESA protections to the lower-48 population of gray wolves.

3       B-3.    Center member and California resident Joshua Able is a professional wildlife

4  photographer who often photographs wolves and has seen wolves in the region where he lives.

5  Center staff member and Oregon resident Noah Greenwald has seen wolves in the wild and

6  makes frequent visits to areas in the U.S. where wolves live, including western Oregon's Mt.

7  Hood National Forest, with hopes of again viewing wolves.  Exh. 6, Greenwald Decl. ¶¶ 5–6, 8.

8       B-4.    Ms. Adkins is a Center member and staff member living and working in

9  Minnesota.  Ms. Adkins' work focuses on gray wolf survival and recovery, and she has for many

10  years camped and hiked in wolf habitat in Minnesota and will continue to do so and look/listen

11  for wolves.  Exh. 2, Adkins Decl. ¶¶ 6–10, 20–22.  Ms. Adkins is working with the Minnesota

12  Department of Natural Resources to update the Minnesota wolf plan, and she serves on the

13  Minnesota Wolf Plan Advisory Committee.  *Id.* at ¶ 16.  Ms. Adkins explains that, with removal

14  of federal protections, "private landowners in two-thirds of the state can kill wolves on their land

15  without any need to have had prior conflict with wolves.  The Minnesota plan also provides for

16  "certified predator controllers" to be paid for every wolf they kill, not unlike the bounty

17  programs of the past.  The killing of wolves during years under state management has been much

18  higher than when federally protected."  *Id.* at ¶ 17.  And as Ms. Adkins explains, even though the

19  Minnesota wolf plan advised that no wolf hunting or trapping occur until at least five years after

20  delisting, when wolves in Minnesota were previously delisted, Minnesota opened a wolf hunting

21  and trapping season that same year that dramatically impacted the Minnesota wolf population.

22  *Id.* at ¶ 18–19.  The Minnesota Legislature is considering a mandatory wolf hunting and trapping

23  provision in an omnibus funding bill, and the possibility of a wolf hunting and trapping season in

24

25  FIRST AMENDED COMPLAINT FOR DECLARATORY
   AND INJUNCTIVE RELIEF - 8 -

26

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

Minnesota as early as fall 2021 poses an imminent risk of harm to her interests in wolves and wolf conservation, a harm that would be remedied by the return of federal protections. *Id.* at ¶¶ 20, 23.

C-1.    Sierra Club, a national nonprofit organization headquartered in Oakland, California, and with 67 chapters nationwide.  Sierra Club has more than 834,000 members dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.  The Club's particular interest in this case and the issues which the case concerns stems from a longstanding commitment to the restoration of healthy wolf populations throughout the United States.  The Sierra Club submitted comments on the proposed gray wolf delisting.

C-2.    Sierra Club has individual members, including Susan Kane Ronning, James Hines, Diane Cain, and Jodi Habush Sinykin, who regularly visit, study, work, photograph, live on, or recreate on lands that are suitable gray wolf habitat.  Each of the members has specific intentions to continue to interact with gray wolves and their habitat frequently and on an ongoing basis, as set forth in the attached declarations.  Sierra Club members and staff derive recreational, spiritual, professional, scientific, educational, and aesthetic benefits from their interactions with gray wolves and their habitat, and the harm to their interests will be remedied by returning federal ESA protections to the lower-48 population of gray wolves.

C-3.    Susan Kane Ronning is a member of the Wildlife Committee of Sierra Club's Washington State Chapter.  She grew up in eastern Washington and has property in Chelan, where the Wenatchee Pack used to roam.  Ms. Ronning hikes, snowshoes, and spends

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 9 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

considerable time in the mountains in Washington's Cascade Range, and has seen a wolf while hiking there and hopes to see one again. Exh. 10, Ronning Decl. ¶¶ 7–8. Sierra Club member James Hines lives in Ventura, California, is passionate about wolves, and has traveled to Yellowstone National Park to see wolves. Exh. 7, Hines Decl. ¶¶ 3–5. Mr. Hines hopes that wolves, most likely dispersing from Oregon, will soon call Mendocino County and northern California home. *Id.* at 7–9.

C-4.   Diane Cain lives in Hixton, Wisconsin and owns land in Jackson County approximately five miles from the dairy farm where she grew up. Exh. 3, Cain Decl. ¶¶ 1-4. Ms. Cain has seen wolves on her land, in her yard, regularly hears wolf howling, and regularly visits areas that are wolf habitat in northern Wisconsin. *Id.* at ¶¶ 5–7. Approximately 31 of the 125 wolves in the region around Ms. Cain's home were killed in Wisconsin's February 2021 wolf hunt. "With continued hunting and aggressive wolf control measures here in Wisconsin, there will be fewer opportunities for me to see and hear wolves, on our property, on state and county lands, and on our trips to northern Wisconsin. I believe that both the natural world and my own life would be seriously diminished by the further loss of wolves that we now have in Wisconsin." *Id.* at ¶ 11. Sierra Club member Jodi Habush Sinykin also lives in Wisconsin and has been an active volunteer focusing on safeguarding Wisconsin's conservation heritage, with a particular focus on Wisconsin's "poorly managed" wolf hunts and year-round training of hounds to hunt wolves. Exh. 12, Sinykin Decl. ¶¶ 1-5. Ms. Sinykin regularly hikes and camps in Wisconsin wolf habitat in hopes of encountering wolves in the wild. *Id.* at ¶ 11.

D-1.   Oregon Wild, a charitable, non-profit corporation headquartered in Portland, Oregon with approximately 20,000 members and supporters who share its mission to protect and restore Oregon's wildlands, wildlife, and waters as an enduring legacy. Oregon Wild has a long

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 10 -

history of advocacy at the state and federal level for gray wolf recovery in Oregon.  Oregon Wild

seeks to protect and restore wolf populations, wolf habitat, and wolf prey populations and seeks

to reduce conflicts between wolves and humans.  Oregon Wild submitted comments on the

proposed gray wolf delisting.

D-2.    Oregon Wild has individual members, including Danielle Moser, who regularly

visit, study, work, photograph, live on, or recreate on lands that are suitable gray wolf habitat.

Each of the members has specific intentions to continue to interact with gray wolves and their

habitat frequently and on an ongoing basis, as set forth in the attached declarations.  Oregon

Wild's members and staff derive recreational, spiritual, professional, scientific, educational, and

aesthetic benefits from their interactions with gray wolves and their habitat, and the harm to their

interests will be remedied by returning federal ESA protections to the lower-48 population of

gray wolves.

D-3.    Danielle Moser is a full-time staff and member of Oregon Wild who enjoys

hiking in forests where wolves are known to live, such as the forests of eastern Oregon and

Southern Oregon.  Ms. Moser leads educational excursions into wolf habitat, as well as a trail

camera project on Mt. Hood and in the Willamette National Forest.  Exh. 9, Moser Decl. ¶¶ 11–

12.  Without federal protections, Oregon's Wolf Plan lowers threshold for when the state can kill

wolves, removing specific requirements for non-lethal conflict deterrence, and opening the door

to consider future public hunting and trapping across the state.  *Id.* at 9.  Oregon has removed

state endangered species protections from gray wolves, and the federal delisting will further

harm Ms. Moser's interests in wolf recovery in Oregon.  *Id.* ¶ 14–15.

E-1.    National Parks Conservation Association ("NPCA"), a non-profit organization

whose mission is to enhance and protect the National Park System.  Headquartered in

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 11 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1  Washington, D.C., NPCA has 27 regional and field offices throughout the country, including the

2  Pacific Regional Field Office in Oakland, California.  NPCA has over 1.3 million members and

3  supporters.  NPCA regularly advocates that protecting and restoring native wildlife, such as gray

4  wolves, to national parks is essential to ensuring park ecosystems are maintained and restored.

5  As part of a coalition of conservation organizations, NPCA submitted comments opposing the

6  delisting challenged in this lawsuit.

7       E-2.    NPCA has individual members, including Jeffrey Davison, Bart Melton, and

8  Christine Goepfert, who regularly visit, study, work, photograph, live on, or recreate on lands

9  that are suitable gray wolf habitat.  Each of the members has specific intentions to continue to

10  interact with gray wolves and their habitat frequently and on an ongoing basis, as set forth in the

11  attached declarations.  NPCA members and staff derive recreational, spiritual, professional,

12  scientific, educational, and aesthetic benefits from their interactions with gray wolves and their

13  habitat, and the harm to their interests will be remedied by returning federal ESA protections to

14  the lower-48 population of gray wolves.

15       E-3.    Colorado resident Jeffrey Davison is a retired Emergency Medical Technician,

16  who enjoys observing wolves and signs of wolves (including howling and tracks) on his ranch on

17  the Little Snake River in Northwest Colorado (nine miles from Dinosaur National Monument)

18  and while hiking and hunting in the nearby area.  Exh. 4, Davison Decl. ¶¶ 3–5.  In March 2020,

19  Mr. Davison found fresh wolf tracks in his yard at his ranch, and he followed them to explore

20  where they came from.  *Id.* at ¶ 6.  Mr. Davison has firm plans to continue to look for wolves and

21  signs of their presence on his ranch and adjacent public lands when he hikes and rafts.  *Id.* at ¶ 7.

22  "I am concerned about new threats to wolves in the areas where I recreate and have my ranch as

23  a result of the federal delisting of wolves in this area.  I understand that wolf management under

24

25  FIRST AMENDED COMPLAINT FOR DECLARATORY
   AND INJUNCTIVE RELIEF - 12 -

26

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

Colorado and Utah laws is less protective than under the federal Endangered Species Act listing. I am concerned that removal of federal protections makes it more likely for wolves to be killed due to livestock conflict and hunting season, and such killing would harm my interests." *Id.* at ¶ 8. Bart Melton is a Washington, D.C., resident and member/staff member of NPCA. Mr. Melton is concerned personally and professionally about the impact that removal of ESA protections will have on the health of gray wolf population in the lower-48 states. Exh. 8, Melton Decl. ¶¶ 7-8, 10-12. Mr. Melton will continue to look for wolves around national parks, including a planned trip to Voyageurs National Park in northern Minnesota where he hopes to see or hear wolves. *Id.* at ¶ 10. Mr. Melton's interests will be harmed as "state agencies take over wolf management on adjacent lands and some implement aggressive removal of wolves through hunting or predator management policies." *Id.* at ¶ 11.

E-4. Christine Goepfert is a member and staff member of NPCA who lives in Minnesota and works to advocate for wolf protection to maintain naturally functioning ecosystems in national park sites in Minnesota and Wisconsin. Exh. 5, Goepfert Decl. ¶¶ 1–5. A deer hunter, Ms. Goepfert seeks to observe wolves and signs of their presence during hunting, camping, and hiking trips in Minnesota and Wisconsin. *Id.* at ¶ 6. Ms. Goepfert has hunted deer in northern Minnesota for 15 years and has "occasionally encountered wolf scat and with it the knowledge that the area where I am hunting hosts a wolf population. This is always an exciting experience, and I hope to see a wolf in the wild someday." *Id.* She is concerned about an increased wolf mortality in Minnesota and Wisconsin following delisting. "I understand that the Minnesota Legislature is considering proposals to require a wolf hunt this fall, and that it is currently updating its state wolf management plan. Either through making it easier for ranchers

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 13 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

to kill wolves or through an open hunt, Minnesota's management of wolves will reduce my opportunity to see wolves and signs of their presence in my home state." *Id.* at ¶¶ 9–10.

F-1.    The Humane Society of The United States ("HSUS"), the nation's largest animal protection organization.  Founded in 1954, HSUS is a non-profit organization headquartered in Washington D.C., with regional offices throughout the United States.  On behalf of members and supporters nationwide, HSUS works to promote the humane treatment of all animals and the protection and recovery of threatened and endangered species and their habitats.  In furtherance of this mission, HSUS has consistently advocated for gray wolves through participation in federal and state regulatory processes, legislative advocacy, litigation, and public outreach and education.  HSUS submitted detailed comments opposing the delisting rule challenged in this lawsuit.

F-2.    HSUS has individual members, including Nancy Warren, Robert Waligora, and Penny Warner, who regularly visit, study, work, photograph, live on, or recreate on lands that are suitable gray wolf habitat.  Each of the members has specific intentions to continue to interact with gray wolves and their habitat frequently and on an ongoing basis, as set forth in the attached declarations.  HSUS members and staff derive recreational, spiritual, professional, scientific, educational, and aesthetic benefits from their interactions with gray wolves and their habitat, and the harm to their interests will be remedied by returning federal ESA protections to the lower-48 population of gray wolves.

F-3.    HSUS member and Michigan resident Nancy Warren has visited, studied, worked, recreated on, or lived on lands that are home to gray wolves, and she intends to continue doing so frequently and on an ongoing basis.  Ms. Warren frequently views wolves and signs of their presence on her property in Michigan's Upper Peninsula, which she has placed in a

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

perpetual conservation easement to preserve its quality as habitat, and where she has

photographed and formed relationships with individual wolves whose unique howls and

behaviors she has come to know.  Exh. 16, Warren Decl. ¶¶ 3, 8–12 (including photographs), 26.

Ms. Warren has dedicated nearly all of her spare time to working for wolf survival and recovery.

*Id.* at ¶ 4.  "Having wolves on our property is very important to my husband and me.  Subjecting

our resident wolf pack to state management negatively impacts our use and enjoyment of our

property, and undermines the conservation purpose for which we maintain it.  I have developed a

strong attachment to these animals, and I would be harmed and deeply saddened if additional

members of our resident wolf pack were killed without justification under state management."

*Id.* at ¶ 13.  Ms. Warren also frequently visits, and intends to continue visiting, wolf habitat in

Michigan, Minnesota, Wisconsin, and other regions to recreate and view wolves in their natural

habitat.  *Id.* at ¶ 14–17.  Ms. Warren is harmed by the risk that Michigan will move forward with

a wolf hunt as early as fall 2021, *id.* at ¶¶ 20–22, and by Michigan allowing more extensive

lethal removal of wolves suspected of livestock depredation, *id.* at ¶ 22.  Delisting harms and

will continue to harm Ms. Warren's ability to use and enjoy her property, which lies

approximately 30 miles from the Wisconsin border and Wisconsin's Wolf Management Zone 2.

*Id.* at ¶ 25.  Ms. Warren submitted an affidavit to support HSUS standing in *Humane Society of

the United States v. Jewell*, and the district court found she alleged a concrete and particularized

injury from delisting.  76 F. Supp. 3d 69, 107 (D.D.C. 2014).

F-4.    Robert Waligora, HSUS member and Minnesota resident, has heard wolves and

seen wolf signs in the Boundary Waters of northern Minnesota and beyond for years.  Exh. 14,

Wagligora Decl. ¶¶ 4–5 (detailing areas visited and plans for future visits).  "In Minnesota,

FWS's decision has already resulted, and will continue to result, in expanded opportunities for

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 15 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

landowners, state agents, and others to lethally take wolves. It will also result in the hunting and

trapping of wolves for sport, as it did in 2011, when state officials rushed to repeal a five-year

moratorium on the recreational killing of wolves to allow for trophy hunting and trapping,

resulting in the deaths of hundreds of wolves. By removing federal protections and returning the

gray wolf to state management, FWS is now allowing the lethal control of these intelligent,

beautiful, and social animals. This killing pains me because I moved to Minnesota in part to be

close to wild areas and wolves." *Id.* at ¶ 8.  Mr. Waligora submitted an affidavit to support

standing in *Humane Society of the United States v. Jewell*, and the district court found he had

"indisputably established, at the very least, an aesthetic interest in the preservation of the gray

wolf in the area."  76 F. Supp. 3d 69, 106–07 (D.D.C. 2014).

F-5.    Wisconsin resident Penny Warner has devoted much of her time to education and

advocacy for Wisconsin's wolves.  Exh. 15, Warner Decl. ¶¶ 4-6.  Ms. Warner has spent

countless hours tracking and howling at wolves in and around Oneida County, and she owns

property in Minocqua that is prime wolf habitat. *Id.* at ¶¶ 8–9.  "The area is excellent for wolf

watching because it is situated in high-quality wolf habitat, and because the many sandy,

gravelly logging roads provide terrain that wolves prefer to travel on.  I enjoy my visits to

Oneida County primarily because I am able to experience wolves in the wild there, and plan to

regularly track and listen for wolves there every year for the rest of my life." *Id.* at ¶ 10.  She has

tracked, viewed, and howled at members of successive generations of a group of wolves on her

land since 1987. *Id.* at ¶ 11.  "Delisting has harmed and will continue to harm my use and

enjoyment of my own property, which I acquired and placed under a conservation easement

specifically to provide a refuge for wolves." *Id.* at ¶ 17. "The FWS's decision to delist the gray

wolf, and the return of wolves to state management, will lead to the unnecessary injury and

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 16 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA 98104-1711*
*(206) 343-7340*

deaths of individual animals, disturb and stress intra-pack relationships, and cause a decline in wolf populations across the Great Lakes, including in and around the areas I visit and own property in Northern Wisconsin." *Id.* at ¶ 19.

11.     Plaintiffs have longstanding interests in the preservation and recovery of gray wolves nationwide because they and their members place a high value on wolves as a species and the presence of gray wolves is essential to the healthy functioning of the ecosystems in which they evolved.  Plaintiffs and their members also value individual wolves and wolf packs and are harmed by the hunting and trapping seasons that will take place in the Midwest states. Plaintiffs and their members are also harmed by the increased ease with which lethal measures can be used on wolves during conflicts with livestock, hunting dogs, or pets now that federal protections have been lifted.  Plaintiffs actively seek to protect and recover the gray wolf through a wide array of actions including public education, scientific analysis, and advocacy intended to promote achievement of healthy ecosystems.

12.     Members of each of the plaintiff conservation groups use public land in the southern Rocky Mountains, California, the Pacific Northwest, the three Midwest states of Wisconsin, Minnesota, and Michigan, and the Northeast for recreational pursuits, including hiking, camping, backpacking, hunting, horseback riding, cross-country skiing, wildlife viewing, and aesthetic enjoyment.  Members of the plaintiff groups work in industries, such as tourism, that depend on the opportunity to view wolves.  Members of the plaintiff groups seek to view wolves and signs of wolf presence in the wild, and federal defendants' challenged action will reduce their opportunity to do so.  Each plaintiff group has individual members, who have lived, visited, studied, worked, and/or recreated on lands that are home to the gray wolf, and they have specific intentions to continue to do so frequently and on an ongoing basis in the future.

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 17 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

13.     The decision to eliminate ESA protections for gray wolves will cause ecological harm to the ecosystems throughout the nation where wolves are now found.  The removal of federal protections from gray wolves and the legal violations alleged in this complaint cause direct injury to the aesthetic, conservation, economic, recreational, scientific, educational, and wildlife preservation interests of the plaintiff organizations and their members.

14.     Plaintiffs' aesthetic, conservation, economic, recreational, scientific, and educational interests have been, are being and, unless their requested relief is granted, will continue to be adversely and irreparably injured by federal defendants' failure to comply with federal law.  These are actual, concrete injuries, traceable to federal defendants' conduct that would be redressed by the requested relief of reinstating federal protections for the lower-48 population of gray wolves.  Plaintiffs have no adequate remedy at law.

15.     The federal defendants in this action are:

A.     <u>United States Fish and Wildlife Service</u>, a federal agency within the Department of the Interior.  FWS is responsible for administering the ESA with respect to terrestrial wildlife such as gray wolves.

B.     <u>Debra Haaland</u>, the U.S. Secretary of the Interior, in her professional capacity. Secretary Haaland has supervisory responsibility over the United States Fish and Wildlife Service, including the administration of the ESA with regard to threatened and endangered terrestrial and freshwater plant and animal species.

BACKGROUND

A.     <u>The Endangered Species Act</u>

16.     Congress enacted the ESA in 1973 to "provide a program for the conservation of . . . endangered species and threatened species" and to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved."  16 U.S.C.

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 18 -

§ 1531(b).  To receive full protections of the Act, a species must first be listed by the Secretary of the Interior as "endangered" or "threatened" pursuant to ESA Section 4.  16 U.S.C. § 1533.

17.    The ESA defines "endangered species" as "any species which is in danger of extinction throughout all or a significant portion of its range."  16 U.S.C. § 1532(6).  A "threatened species" is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."  16 U.S.C. § 1532(20). The term "species" is defined to include "any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature."  16 U.S.C. § 1532(16).  Under these definitions, the FWS can list or delist a distinct population segment ("DPS") of a vertebrate species, even when the species as a whole would not warrant such a listing or delisting action. The listing provisions are contained in Section 4 of the ESA—the section Congress labeled the "cornerstone of effective implementation" of the Act.  S. Rep. No. 97-418, at 10 (1982).

18.    In making decisions to list or delist a species, including a DPS, as "endangered" or "threatened," the ESA requires the Secretary to "determine whether the species is an endangered species or a threatened species because of any of the following factors:

(A)    the present or threatened destruction, modification, or curtailment of its habitat or range;
(B)    overutilization for commercial, recreational, scientific, or educational purposes;
(C)    disease or predation;
(D)    the inadequacy of existing regulatory mechanisms; or
(E)    other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1).  The Secretary must make these determinations "solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species."  16 U.S.C. § 1533(b)(1)(A).

19.    Once a species is listed as "endangered" or "threatened" under the ESA, "all Federal departments and agencies shall seek to conserve endangered species and threatened

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 19 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1    species and shall utilize their authorities in furtherance of the purposes of [the ESA]." 16 U.S.C.

2    § 1531(c).

3         B.    <u>Gray Wolves in the United States</u>

4         20.    The gray wolf (*Canis lupus*) is the largest wild member of the dog family

5    (*Canidae*).  Despite the name, the fur of a gray wolf can range from white to shades of gray to

6    coal black.  Gray wolves are territorial and social animals that exhibit group hunting and

7    opportunistic scavenging behavior, normally living in packs of 7 or fewer animals.

8         21.    Wolves primarily prey on medium and large mammals.  Wolf populations are

9    self-regulating, and their populations are generally limited by prey availability.  Within the

10   United States, studies of gray wolves in Yellowstone National Park and elsewhere demonstrate

11   that wolves' predations significantly shape their ecosystems, promoting biodiversity and overall

12   ecosystem health.

13        22.    Historically, gray wolves were the nation's most common large carnivore, with

14   habitat generally thought to extend across nearly all of North America.  Many Native American

15   cultures revere gray wolves.  With European settlement, however, "superstition and fears … led

16   to widespread persecution of wolves."  68 Fed. Reg. 15,804, 15,805 (Apr. 1, 2003).  According

17   to FWS, "wolves were hunted and killed with more passion and zeal than any other animal in

18   U.S. history."[1]  This hunting, together with an active eradication program sponsored and carried

19   out by FWS and its predecessor agency, resulted in the extirpation of wolves from more than 95

20   percent of their range in the lower-48 states.

21

22

23   _____

[1] U.S. Fish and Wildlife Service, Gray Wolf, March 2003, at 1 ("Gray Wolf Bio),
24   https://www.fws.gov/northeast/graywolf/wolfbio.pdf (last visited Jan. 8, 2021).

25   FIRST AMENDED COMPLAINT FOR DECLARATORY
     AND INJUNCTIVE RELIEF - 20 -

26

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

23.     Two subspecies of gray wolves were originally granted legal protection under the Endangered Species Preservation Act of 1966.  32 Fed. Reg. 4,001 (March 11, 1967) (*C. l. lycaon*); 38 Fed. Reg. 14,678 (June 4, 1973) (*C. l. irremotus*).  In January 1974, those wolves were granted protection under the then current version of the ESA.  39 Fed. Reg. 1,171 (January 4, 1974).  Other subspecies of gray wolves were later granted protections under the ESA.  41 Fed. Reg. 17,736 (April 28, 1976) (*C. l. baileyi*); 41 Fed. Reg. 24,064 (June 14, 1976) (*C. l. monstrabilis*).  After recognizing the uncertain scientific validity of the subspecies classifications, the FWS in 1978 reclassified gray wolves as endangered at the species level throughout the contiguous United States, except for a population in Minnesota, which was listed as a threatened species.  43 Fed. Reg. 9,607 (Mar. 9, 1978).

24.     Today, there are wolf populations in the Midwest that have grown in numbers but not yet recovered; wolves in the Northern Rocky Mountains where federal protections were lifted almost a decade ago; wolves that are just beginning their recovery in the Pacific Northwest and California; and wolf habitat has been explored but largely unclaimed by wolves in states including Maine, Colorado, and Utah.  Slowly, with the ESA's protections, nationwide wolf recovery has been moving forward.  Currently, the gray wolf exists only on a fraction of its range and at population numbers well below historical levels.

25.     These early steps towards the recovery of gray wolves should be celebrated as an American success story.  Yet rather than build on the documented progress, for close to twenty years, FWS has proposed stripping away protections and exposing wolves to severe new mortality threats, often relying on versions of a single, flawed legal theory: limited improvements in limited areas can justify widespread delisting.  Federal courts have consistently rejected this approach as invalid.

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 21 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

26.     In 2003, FWS issued a final rule that created three new wolf DPSs and downlisted two of them.  The courts invalidated FWS's attempt because the agency assessed only the status of core populations in portions of the new DPSs and did not apply the statutory listing factors outside of those areas.  *See Defenders of Wildlife v. Norton*, 354 F. Supp. 2d 1156, 1170–72 (D. Or. 2005) and *Nat'l Wildlife Fed'n v. Norton*, 386 F. Supp. 2d 553, 564–65 (D. Vt. 2005).

27.     Variations on this approach—drawing a narrow DPS while ignoring the broader population and the wider habitat availability—were repeated by FWS with almost clockwork regularity in 2007, 2008, 2009, and 2011.  After the 2011 federal delisting, the states of Wisconsin, Minnesota, and Michigan held annual wolf hunts—killing hundreds of wolves and reducing population numbers—until federal protections were put back in place.  *See Humane Soc'y of the United States v. Jewell*, 76 F. Supp. 3d 69, 108 (D.D.C. 2014).  All of these delisting attempts were challenged by wolf advocates—including plaintiffs here—and routinely rejected by the courts.  *See Humane Soc'y of the United States v. Kempthorne*, 579 F. Supp. 2d (D.D.C. 2008) (vacating rule); *Defenders of Wildlife v. Hall*, 565 F. Supp. 2d 1160 (D. Mont. 2008) (enjoining rule); *Humane Soc'y of the United States v. Salazar*, No. 09-1092-PLF (D.D.C. 2009) (settlement vacating rule); *Defenders of Wildlife v. Salazar*, 729 F. Supp. 2d 1207 (D. Mont. 2010) (vacating rule); *Humane Soc'y of the United States v. Jewell*, 76 F. Supp. 3d 69 (D.D.C. 2014) (vacating rule), *aff'd* 865 F.3d 585 (D.C. Cir. 2017).

28.     FWS delisted the Northern Rocky Mountains DPS of gray wolves, with the exception of wolves in Wyoming, in 2011, as directed by Congress, Public Law 112-10, § 1713. Wyoming wolves were delisted in 2017.  *Defenders of Wildlife v. Zinke*, 849 F.3d 1077 (D.C. Cir. 2017).

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 22 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

C.      2020 Delisting Rule

29.     In March 2019, the FWS proposed eliminating ESA protections for the gray wolf throughout the contiguous United States, except for a small population of Mexican gray wolves (*C. l. baileyi*) in Arizona and New Mexico.  84 Fed. Reg. 9,648 (Mar. 15, 2019).  Over 1.5 million comments on the proposal were ultimately received, an outpouring that may have led the FWS to extend the public comment period by an additional two months and hold an informational open house and public hearing on the proposal.

30.     Numerous members of Congress and more than 100 scientists signed letters of opposition while top government officials in California, Oregon, and Washington all spoke out against the proposed rule.  A scientific peer review commissioned by FWS provided sharp criticism of the proposal, with several of the scientists opposing the rule as falling short of the best available science.  Summary Report of Independent Peer Reviews for the U.S. Fish and Wildlife Service Gray Wolf Delisting Review (May 2019).

31.     The peer review report included the comments of one eminent scientist who found that the FWS failed to "provide coherent factual support or logical explanation for the agency's conclusions," bemoaned the "lack of detail and rigor in the treatment of genetic issues," and faulted the "extreme oversimplification" of wolf genetics.  Summary Report, App. C, Reviewer 2—Dr. Charles (Carlos) Carroll at 5–7.  Other independent peer reviewers were similarly critical. Reviewer 4—Dr. Adrian Treves at 1, 9–21 ("the proposed rule does not address human-caused mortality or habitat suitability adequately"); Reviewer 5—Dr. Daniel R. MacNulty at 5 ("I found no scientific information in the Proposed Rule or Draft Biological Report supportive of the Service's interpretation that western listed wolves are not discrete from wolves in Minnesota, Wisconsin, and Michigan.").

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 23 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

32.     Nevertheless, on November 3, 2020, FWS moved forward with its plans and issued its Final Rule delisting the gray wolf.  85 Fed. Reg. 69,844 (Nov. 3, 2020).  The Delisting Rule became effective on January 4, 2021.

33.     For any delisting, FWS's analysis must include the already-listed entity.  Yet FWS considered the Minnesota and the lower-48 populations together and delisted "the gray wolf entity," claiming "neither of the listed entities is a DPS."  85 Fed. Reg. at 69,784.

34.     Furthermore, similar to its prior failed delisting efforts, FWS limited its focus to the wolf populations in the Midwest, ignoring habitat in the southern Rockies and Northeast altogether and dismissing the gray wolf populations in the Pacific Northwest as unimportant to wolf recovery.

35.     As emphasized by one of the FWS peer reviewers, the assumption that the loss of all gray wolf populations outside the Great Lakes region would not threaten the listed entity relies on faulty science.  Summary Report, App. C, Reviewer 2—Dr. Charles (Carlos) Carroll at 8–9, 16.

36.     Compounding its errors, the Delisting Rule rests on population targets set out in the Service's 1992 Recovery Plan for the Eastern Timber Wolf to conclude that recovery has been achieved.  As with the Delisting Rule itself, the plan is concentrated on the status of wolves in the Midwest, specifically Minnesota.  First approved in 1978 and last updated over 25 years ago, the plan does not account for the best available science and is entirely unsuitable for assessing wolf recovery in 2020, a quarter-century later.

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 24 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF

Violation of the Endangered Species Act:
Failure to Apply Listing Factors to Entire Gray Wolf Population

37.     ESA Section 4(a) sets forth a five-factor test for determining whether a species is threatened or endangered, 16 U.S.C. § 1533(a)(1)(A)–(E).

38.     On the basis of these factors, for delisting, FWS must determine whether a species has recovered and no longer meets the listing factors.  The delisting evaluation must include rational consideration of the relevant species that was originally listed.

39.     In this instance, the relevant "species" are the Minnesota and lower-48 states' wolf populations.  *See* 43 Fed. Reg. 9,607 (listing wolves in Minnesota as threatened and wolves in the lower-48 U.S. states and Mexico as endangered).

40.     FWS's analysis of the Section 4(a) factors focused nearly exclusively on the wolf population in Minnesota, Michigan, and Wisconsin.  FWS analyzed some of the factors for wolves in Washington, Oregon, and California, but only to determine how those populations affected wolves in the Midwest.

41.     Consequently, large portions of the lower-48 gray wolf population will lose ESA protections despite the FWS's failure to assess the status of those wolves under the statutory listing factors.

42.     FWS also noted that while it believed that "neither of the two gray wolf listed entities constitute valid listable entities," 84 Fed. Reg. at 9,686, it did not act solely on that basis in the Delisting Rule.  "Instead, [FWS] elected to consider whether the gray wolves within the currently listed entities meet the definition of a threatened or an endangered species, in this case

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 25 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

whether they are recovered." 85 Fed. Reg. at 69,844.  Nevertheless, FWS's determination that the gray wolf listed entities do not constitute valid listable entities was arbitrary.

43.     Moreover, FWS justified its incomplete assessment of the threats facing wolves in Washington, Oregon, and California on the erroneous grounds that wolves in these states are an extension of the wolf population in the delisted Northern Rocky Mountains DPS.  85 Fed. Reg. at 69,843.  Those wolves are not part of the Northern Rocky Mountains DPS, and FWS did not attempt to modify the Northern Rocky Mountains DPS to include them.  FWS cannot rationally dismiss threats to these wolves on the basis that they originated from a DPS that no longer encompasses them.

44.     In addition, FWS failed to utilize the best available science to assess the stability, genetic health, taxonomic status, and habitat of the listed wolf population across the lower-48 states, including a failure to adequately assess the minimum viable population and effective population sizes necessary to ensure long-term genetic viability.

45.     FWS further departed from the best available science by relying on a decades-old recovery plan that is based heavily on wolf numbers in the Midwest, magnifying the agency's failure to adequately consider the status of wolves elsewhere.  Such a plan does not provide the "objective and measurable criteria" to support delisting outside of the plan's geographic scope. 16 U.S.C. § 1533(f)(1)(B)(i)–(iii).

46.     FWS's failure to adequately apply the ESA factors to the entire listed wolf population in the Delisting Rule and its reliance on an outdated and inadequate recovery plan violates the ESA, ignores the best available science, and is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.  16 U.S.C. § 1533; 5 U.S.C. § 706.

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 26 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

SECOND CLAIM FOR RELIEF

Violation of the Endangered Species Act:
Failure to Assess Gray Wolves' Status Within Significant Portions of Their Current Range

47.     The ESA defines endangered and threatened species as "any species which is in danger of extinction or is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range[.]" 16 U.S.C. § 1532(6), (20).  The ESA does not define the phrase "significant portion of its range," although the FWS now interprets the term to include only "current" range.  *See* 79 Fed. Reg. 37,578 (July 1, 2014).

48.     FWS dismissed threats to wolves in significant portions of their range by improperly constricting its definition of "current range."  FWS has acknowledged documented wolves in Vermont, Massachusetts, New York, Indiana, Illinois, Iowa, Missouri, North Dakota, South Dakota, Nebraska, Kansas, Colorado, Utah, Arizona, and Nevada over the last twenty years.  85 Fed. Reg. at 69,789.  Independent reviews have documented wolves in many more states.

49.     FWS, however, did not consider these areas to be part of the gray wolf's current range because they exist outside of established wolf packs or breeding pairs in the Midwest and Pacific Northwest.

50.     Limiting current range in such a way is not consistent with the FWS's own policy that defines range to encompass the "general geographical area within which the species is currently found, including those areas used throughout all or part of the species' life cycle, *even if not used on a regular basis*."  79 Fed. Reg. at 37,583 (emphasis added).

51.     The delisting rule is also virtually silent on wolves and wolf habitat in Colorado, Utah, and the northeast United States.  The lack of established wolf packs in Colorado, Utah, and

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 27 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

New Mexico is used as an excuse to avoid consideration of suitable wolf habitat there.  Colorado

alone could support a population of more than 1,000 wolves, based on prior habitat modeling.

52.     FWS arbitrarily assessed whether portions of the gray wolf's range are

"significant," 16 U.S.C. § 1532(6), repeating a circular definition of "significant" that has

already been rejected by courts and is contrary to the ESA's conservation purpose.  *Id.* §1531(b).

53.     Under FWS's policy for interpreting "significant portion of [the] range" ("SPR

Policy"), listing a species based on threats in a significant portion of its range would be

considered warranted only if three conditions were satisfied: (1) the species was neither

endangered nor threatened throughout all of its range; (2) the portion's contribution to the

viability of the species was so important that, without the members in that portion, the species

would be endangered or threatened throughout all of its range; and (3) the species was

endangered or threatened in that portion of its range.  79 Fed. Reg. 37,578.

54.     The courts rejected FWS's SPR position as "illusory," because "if a portion of a

species' range is so vital that its loss would render the entire species endangered or threatened,

and the species is endangered or threatened in that portion, then the entire species is necessarily

endangered or threatened.  <u>Threats that render a species endangered or threatened in such a vital</u>

<u>portion of its range should necessarily be imputed to the species overall.</u>"  *Center for Biological*

*Diversity v. Jewell*, 248 F. Supp. 3d 946, 956 (D. Ariz. 2017) (emphasis added); *Desert Survivors*

*v. U.S. Dep't of Interior,* 321 F. Supp. 3d 1011 (N.D. Cal. 2018).  The district court in *Desert*

*Survivors* vacated the "significant portion" element of the SPR Policy nationwide.  336 F. Supp.

3d 1131, 1134–37 (N.D. Cal. 2018).

55.     Although FWS asserted in the Delisting Rule that its approach was "substantively

different" from the way the agency defined "significance" in its vacated SPR policy, there is no

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 28 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

material substantive difference and any distinction in its reasoning is legally inconsequential. 85 Fed. Reg. at 69,854.

56.     FWS maintained in the Delisting Rule that, for each of the combinations of wolf populations considered "these portions are not 'significant' under any reasonable definition of that term because they are not biologically meaningful to the [listed] entity in terms of its resiliency, redundancy, or representation." *Id.* at 69,882, 69,885, 69,888, 69,889, 69,892, 69,893.

57.     As a result of its flawed logic, FWS determined that there are no significant portions of the gray wolf's range because the single gray wolf population that resides in the three Western Great Lakes states—Minnesota, Michigan, and Wisconsin—is neither threatened nor endangered.  This disregard for the status of wolves that are found in northeastern and western states ignores the specific command of Congress to consider other, "significant" portions of the species' range.  As courts have found, such an interpretation renders the statutory language mere surplusage.

58.     Similarly, FWS dismissed wolves on the West Coast because only a small number of animals currently live there and characterized the Pacific wolves as "colonizing wolves" from the Northern Rocky Mountains whose presence is unnecessary for wolf recovery.  Yet when the Northern Rocky Mountain DPS was carved from the lower-48 listing, FWS found that it was discrete from any wolves that could repopulate the west coast states due to the stretches of unsuitable habitat between them.  73 Fed. Reg. 10,518, 10,519 (Feb. 27, 2008).  Reversing itself, FWS now claims, without adequate justification, that the Pacific wolves are not distinct and not "significant."  In fact, the best available science shows that wolf populations on the West Coast

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 29 -

1 and elsewhere constitute significant portions of the gray wolf's range where wolves remain

2 threatened with extinction.

3      59.    FWS's failure to adequately consider whether wolves are threatened or

4 endangered throughout a significant portion of their range in the Delisting Rule violates the ESA,

5 ignores the best available science, and is arbitrary, capricious, an abuse of discretion, and

6 otherwise contrary to law.  16 U.S.C. §§ 1532, 1533; 5 U.S.C. § 706.

7

8 THIRD CLAIM FOR RELIEF

9 Violation of the Endangered Species Act:<br>Failure to Adequately Consider Existing Management by States

10      60.    FWS must determine whether the lower-48 gray wolf entity remains endangered

11 or threatened because of any of five factors, including "the inadequacy of existing regulatory

12 mechanisms" and the "overutilization" from, *inter alia*, commercial and recreational purposes.

13 16 U.S.C. § 1533(a)(1)(B)&(D).

14      61.    With removal of federal ESA protections, wolf management returns to each

15 individual state.  While there are states that have reluctantly welcomed wolves and put together

16 state plans for wolf management, some states are overtly hostile to wolves and wolf recovery,

17 some have state statutes and regulations that allow wolf hunting and trapping, and some have no

18 explicit wolf statutes, regulations, or plans at all.

19      62.    The majority of states within the lower-48 have no specific protections in place

20 for gray wolves; including states that have a wolf presence like Indiana, Kentucky,

21 Massachusetts, Maine, Missouri, Ohio, Utah, and Vermont.  *See* 78 Fed. Reg. at 35,675.

22      63.    Other states seek to actively prevent recovery of the species.  For example, prior

23 to the Delisting Rule, Utah required state wildlife officials to capture and kill any wolf that came

24 into the state to prevent the establishment of a viable wolf pack.  Utah Code § 23-29-201.  South

25 FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 30 -

26

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

Dakota in 2013 passed legislation designating wolves in the eastern half of the state as "varmints" that can be shot on sight.  S.D. Codified Laws § 41-1-1.  A number of states with wolves within their borders have classified wolves as furbearers or game animals and would likely allow regulated hunting and trapping and increased livestock predation control upon removal of federal protections, including Iowa, Kansas, Michigan, Minnesota, Nevada, North Dakota, Oregon, South Dakota, and Washington.  Wisconsin is required to have an annual wolf hunting season under state statute.  Wis. Stat. § 29.185(1m).  While wolf management plans in Minnesota and Michigan either advise against a wolf hunt earlier than five years following delisting (Minn.) or do not require immediate wolf hunts following delisting (Mich.), both states quickly held wolf hunts in the years following the prior federal delisting in 2011, and both state legislatures have recently urged immediate wolf hunts in 2021.

64.     Several of these states have committed to managing wolves for an aggressive population decline following delisting, on the basis of inadequate and out-of-date management plans that do not reflect the best available science regarding the super-additive effects of hunting mortality on wolf populations or the population sizes necessary to maintain wolves' genetic viability over the short and long term.  There were about 4,200 wolves in the Minnesota, Michigan, and Wisconsin region when FWS issued the Delisting Rule, but these states have committed to maintaining only half that number.  Several state plans also allow expanded lethal control when livestock, hunting dogs, or pets are depredated or threatened.  FWS failed to adequately assess the deficiencies of these plans and the resulting threats that wolves will face post-delisting under such plans.

65.     FWS also failed to adequately review state wolf management plans in Washington, Oregon, and California.  *See* 85 Fed. Reg. at 69,835–37.  California and Oregon

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 31 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

only recently adopted wolf management plans, and their effectiveness is uncertain. Washington's state wolf management plan has been controversial, has led to multiple years of state lethal control actions, and threatens to preclude permanent recovery.

66.     FWS's failure to fully consider the inadequacy of existing regulatory mechanisms and overutilization for commercial and recreational purposes in the Delisting Rule violates the ESA, ignores the best available science, and is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.  16 U.S.C. § 1533; 5 U.S.C. § 706.

FOURTH CLAIM FOR RELIEF

Violation of the Endangered Species Act:
Failure to Consider Gray Wolves Lost Historical Range

67.     FWS must determine whether the lower-48 gray wolf entity remains endangered or threatened because of any of five factors, including "the present or threatened destruction, modification, or curtailment of its habitat or range."  16 U.S.C. § 1533(a)(1)(A).

68.     It is recognized that "gray wolves have been extirpated from most of the southern portions of their historical North American range," with undisputed estimates that "95% of the gray wolf's historical range has disappeared."  *Humane Soc'y v. Zinke*, 865 F.3d at 606.

69.     FWS failed to analyze the impact of that loss of historical range on the survival of the gray wolves as a whole or in various segments.

70.     FWS's delisting rule discussed historical range and abundance of gray wolves (85 Fed. Reg. at 69,786 and Figure 2) and contained a section entitled historical context (85 Fed. Reg. at 69,792).  Yet FWS omitted lost historical range in its actual delisting analysis.  *Id.* at 69,853 ("In other words, we interpret 'range' in these definitions to be current range, i.e., range at the time of our analysis.").  This omission is particularly problematic with respect to areas in

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 32 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1   the Northeast as there is no analysis at all of how that lost range affects the viability of wolf

2   populations in other areas.

3       71.    FWS's failure to consider the existing destruction and curtailment of the gray

4   wolves' historical habitat in the Delisting Rule violates the ESA, ignores the best available

5   science, and is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

6   16 U.S.C. § 1533; 5 U.S.C. § 706.

7
                                 FIFTH CLAIM FOR RELIEF
8
        Violation of the Endangered Species Act and the Administrative Procedure Act:
9              Denial of Petition to Designate Distinct Population Segments

10       72.    In 2018, plaintiffs Center for Biological Diversity and Humane Society of the

11   United States submitted to FWS a Petition to Maintain Protections for Gray Wolves (*Canis*

12   *lupus*) in the Lower-48 States as Endangered or Threatened "Distinct Population Segments"

13   Under the Endangered Species Act (December 17, 2018).

14       73.    In the Delisting Rule, FWS denied the petition without rational justification,

15   summarily and unjustifiably finding that it did not present substantial scientific or commercial

16   information indicating that the petitioned actions were warranted.  85 Fed. Reg. at 69,778,

17   69,878–79.

18       74.    FWS's denial violates the ESA, ignores the best available science, and is

19   arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.  16 U.S.C. § 1533;

20   5 U.S.C. §§ 706; 555(e).

21

22

23

24

25   FIRST AMENDED COMPLAINT FOR DECLARATORY
26   AND INJUNCTIVE RELIEF - 33 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

(A)   Declare that FWS violated the ESA and its implementing regulations in promulgating the 2020 Delisting Rule;

(B)   Hold unlawful and vacate the 2020 Delisting Rule;

(C)   Reinstate FWS's prior rule affording ESA protections for gray wolves in the lower-48 states;

(D)   Declare that FWS violated the ESA and its implementing regulations in denying the gray wolf listing petition submitted in December 2018;

(E)   Remand the listing petition to FWS;

(F)   Award plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees; and

(G)   Grant plaintiffs such further and additional relief as the Court may deem just and proper.

FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 34 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1    DATED this 20th day of May, 2021.

2                                        Respectfully submitted,

3                                        s/ Kristen L. Boyles
                                         KRISTEN L. BOYLES (CSBA #158450)
4                                        MICHAEL MAYER (WSBA #32135)
                                         [Admitted Pro Hac Vice]
5                                        EARTHJUSTICE
                                         810 Third Avenue, Suite 610
6                                        Seattle, WA  98104
                                         (206) 343-7340
7                                        kboyles@earthjustice.org

8                                        TIMOTHY J. PRESO (MSBA #5255)
                                         [Admitted Pro Hac Vice]
9                                        EARTHJUSTICE
                                         313 East Main Street
10                                       Bozeman, MT  59715
                                         (406) 586-9695
11                                       tpreso@earthjustice.org

12                                       Attorneys for Plaintiffs

13                                       GREGORY C. LOARIE (CSBA #215859)
                                         EARTHJUSTICE
14                                       50 California Street, Suite 500
                                         San Francisco, CA 94111
15                                       (415) 217-2000
                                         gloarie@earthjustice.org

16
                                         Local Counsel for Plaintiffs
17

18

19

20

21

22

23

24

25   FIRST AMENDED COMPLAINT FOR DECLARATORY        Earthjustice
                                                    810 Third Avenue, Suite 610
     AND INJUNCTIVE RELIEF - 35 -                   Seattle, WA  98104-1711
26                                                  (206) 343-7340