ANTHONY L. RAMPTON (Utah Bar #2681) (*pro hac vice*)
KATHY A.F. DAVIS (Utah Bar #4022) (*pro hac vice*)
JASON DEFOREST (Utah Bar # 14628) (*pro hac vice*)
KELSIE LAST (CA Bar #319614)
Assistant Attorneys General
SEAN D. REYES (Utah Bar #7969)
Utah Attorney General
Utah Attorney General's Office
5110 State Office Building
P.O. Box 142477
Salt Lake City, UT 84114-4277
Tel: (801) 537-9801
arampton@agutah.gov
kathydavis@agutah.gov
jdeforest@agutah.gov
klast@agutah.gov

*Attorneys for Proposed Defendant-Intervenor State of Utah*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| DEFENDERS OF WILDLIFE, et al.,<br><br>    *Plaintiffs,*<br><br>v.<br><br>U.S. FISH AND WILDLIFE SERVICE, et al.,<br><br>    *Defendants, and*<br><br>NATIONAL RIFLE ASSOCIATION OF AMERICA, et al.,<br><br>    *Defendant-Intervenors, and*<br><br>STATE OF UTAH,<br><br>    *Defendant-Intervenor-Applicants.* | Case No. 4:21-cv-344-JSW<br><br>Related Cases:<br>4:21-cv-349-JSW<br>4:21-cv-561-JSW<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE BY THE STATE OF UTAH**<br><br>Honorable Judge Jeffery S. White<br><br>Hearing Date: September 10, 2021<br>Time: 9:00 a.m.<br>Place: Courtroom 5<br>1301 Clay Street, Oakland, CA |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT the State of Utah hereby motions the Court for leave to Intervene in the above-captioned cases.

NOTICE IS HEREBY GIVEN, pursuant to Civil Local Rule 7-2, that on September 10, 2021 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Jeffery S. White, at the United States Courthouse, 1301 Clay Street, Oakland, CA 94612, the State of Utah ("Utah"), by and through counsel, will move the Court for leave to intervene as Defendant-Intervenor in the above-entitled actions.

The above-entitled actions, brought by Defenders of Wildlife, *et al*., challenge the U.S. Fish and Wildlife Service's ("FWS") decision to remove gray wolves in the lower 48 U.S. states from the list of endangered and threatened species, per the Endangered Species Act, 16 U.S.C. §1531 *et seq*. The FWS' decision removed federal protections for the wolves, turned over managements of the wolves to the states, and allows states to manage their wolf population using sustainable use principles. State of Utah is entitled to intervention as a matter of right because (1) this Motion is timely and does not prejudice any existing party; (2) State of Utah has legally protectable interests in its role as trustee for its citizens to manage wildlife; (3) those interests will be impaired if Plaintiffs' challenge succeeds; and (4) those interests are not adequately represented by the Federal Defendants or the public interest groups. Alternatively, the State of Utah requests that this Court grant permissive intervention in whole or in part for the reasons noted above and because their interests share common questions of law and fact with the main action.

Pursuant to Federal Rule of Civil Procedure 24, Utah respectfully moves to intervene as a Defendant-Intervenor in the above-captioned related cases. Counsel for Defendants-Intervenors, National Rifle Association ("NRA") and the Safari Club, have been consulted and have consented to Utah's intervention. Counsel for Defendants, U.S. Department of the Interior, have been consulted and indicated they will not be taking a position on the instant Motion. Plaintiffs

in all three related cases: Natural Resources Defense Council ("NRDC"); Defenders of Wildlife; Center for Biological Diversity; Sierra Club; National Parks Conservation Association ("NPCA"); Oregon Wild; Humane Society of the United States ("HSUS"); and Wild Earth Guardians will not stipulate to intervention and reserved their right to file a response after reviewing the instant Motion. This motion is supported by the accompanying Memorandum. A proposed form of order also accompanies this motion.

WHEREFORE, Utah prays that the Court grant the instant motion, and thereby grant Utah leave to intervene as a Defendant in these actions. Utah further agrees to, and will comply with, the schedule set forth in the Minute Entry of this Court dated July 2, 2021 (Dkt. 76) (the "Scheduling Order").

DATED this 26th day of July 2021.

 */s/ Kelsie Last*
KELSIE LAST
ANTHONY RAMPTON
KATHY DAVIS
JASON DEFOREST
*Attorneys for State of Utah*

ANTHONY L. RAMPTON (Utah Bar #2681) (*pro hac vice*)
KATHY A.F. DAVIS (Utah Bar #4022) (*pro hac vice*)
JASON DEFOREST (Utah Bar # 14628) (*pro hac vice*)
KELSIE LAST (CA Bar #319614)
Assistant Attorneys General
SEAN D. REYES (Utah Bar #7969)
Utah Attorney General
Utah Attorney General's Office
5110 State Office Building
P.O. Box 142477
Salt Lake City, UT 84114-4277
Tel: (801) 537-9801
arampton@agutah.gov
kathydavis@agutah.gov
jdeforest@agutah.gov
klast@agutah.gov

*Attorneys for Proposed Defendant-Intervenor State of Utah*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| DEFENDERS OF WILDLIFE, et al., | Case No. 4:21-cv-344-JSW |
| *Plaintiffs,* | Related Cases: |
| v. | 4:21-cv-349-JSW<br>4:21-cv-561-JSW |
| U.S. FISH AND WILDLIFE SERVICE, et al., | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE BY THE STATE OF UTAH** |
| *Defendants, and* | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA, et al., | Honorable Judge Jeffery S. White |
| *Defendant-Intervenors, and* | Hearing Date: September 10, 2021<br>Time: 9:00 a.m. |
| STATE OF UTAH, | Place: Courtroom 5<br>1301 Clay Street, Oakland, CA |
| *Defendant-Intervenor-Applicants.* | |

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................................i

STATEMENT OF AUTHORITIES ............................................................................................ii

SUMMARY OF ARGUMENT ....................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ..........................................................................1

STATEMENT OF STANDING ....................................................................................................2

BACKGROUND ..........................................................................................................................2

PROCEDURAL BACKGROUND................................................................................................7

ARGUMENT.................................................................................................................................7

I.   INTERVENTION OF RIGHT.......................................................................................7

   A.   Timeliness............................................................................................................8

   B.   Interest and Impairment ......................................................................................9

   C.   Inadequate Representation ................................................................................11

II.  PERMISSIVE INTERVENTION ...............................................................................13

CONCLUSION ...........................................................................................................................14

# STATEMENT OF AUTHORITIES

## Cases

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003)......................................................................................13

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998)..................................................................................2, 13

*Foster v. Gueory,*
    655 F.2d 1319 (D.C. 1981).........................................................................................11

*Idaho Farm Bureau Fed. v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995).........................................................................................8

*Kootenai Tribe of Idaho v. Veneman,*
    313 F.3d 1094 (9th Cir. 2002).....................................................................................13

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992).......................................................................................................2

*Massachusetts v. E.P.A.,*
    549 U.S. 497 (2007).......................................................................................................2

*Sierra Club v. Robertson,*
    960 F.2d 83 (8th Cir. 1992).........................................................................................11

*Sw. Center for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001)....................................................................................1, 8

*Trbovich v. United Mine Workers of Am.,*
    404 U.S. 528 (1972).....................................................................................................11

*U.S. ex rel. McGough v. Covington Tech. Co.,*
    967 F.2d 1391 (9th Cir. 1992).......................................................................................8

*United States v. City of Los Angeles,*
    288 F.3d 391 (9th Cir. 2002).......................................................................................11

*Utah Ass'n of Counties v. Clinton,*
    255 F.3d 1246 (10th Cir. 2001)...................................................................................11

*Wilderness Soc'y v. U.S. Forest Serv.,*
    630 F.3d 1173 (9th Cir. 2011).......................................................................................9

## Statutes

28 U.S.C. § 1331.................................................................................................................13
5 U.S.C. § 702...................................................................................................................14
Utah Code Ann. § 23-13-2....................................................................................................4
Utah Code Ann. § 23-13-3..................................................................................................10
Utah Code Ann. § 23-14-1...........................................................................................2, 3, 10
Utah Code Ann. § 23-14-3.............................................................................................3, 10
Utah Code Ann. § 4-23-102.............................................................................................6, 7
Utah Code Ann. § 4-23-105..................................................................................................6

## Rules

84 Fed. Reg. 69786..........................................................................................................1, 4
85 Fed. Reg. 69778..........................................................................................................1, 2
85 Fed. Reg. 69781.............................................................................................................3
85 Fed. Reg. 69787.............................................................................................................4

Fed. R. Civ. P. 24...................................................................................................................... 1, 2, 13

**Other Authorities**

Utah Division of Wildlife Resources & The Utah Wolf Working Group. *Utah Wolf Management Plan*. Utah Division of Wildlife Resources Publication #: 05-17 (2005)

Colorado Proposition 114 (2020). Reintroduction and Management of Gray Wolves,

REINTRODUCTION AND MANAGEMENT OF GRAY WOLVES | COLORADO GENERAL ASSEMBLY,

https://leg.colorado.gov/ballots/reintroduction-and-management-gray-wolves

1

## SUMMARY OF ARGUMENT

On November 3rd, 2020, the Department of Interior ("DOI"), through the U.S. Fish and Wildlife Service ("FWS"), published its final Delisting Decision removing gray wolves from the endangered species list. 85 Fed. Reg. 69778. The decision removed the strict federal oversight of gray wolves (*Canis lupus*) in the lower 48 states of the United States. DOI justified this decision based on the revival of wolf packs in the Western Great Lakes DPS ("WGL"), the success of wolf reestablishment in the Northern Rocky Mountain DPS ("NRM"), and the spread of colonizing wolves. FWS' decision is based on the best available scientific evidence that indicates that *Canis lupus* is no longer an endangered species, nor is it likely to become an endangered species in the foreseeable future, as indicated by its increasing population numbers and circumpolar distribution. 84 Fed. Reg. 69786. The Plaintiffs have challenged this delisting, aiming to restore strict federal management of gray wolves and pre-empt state management.

The State of Utah should be granted intervention in this above-entitled action as a matter of right. First, this motion is timely as the case is only in the beginning stages and no party would be prejudiced by Utah's entry into this matter. Second, the State has substantial interests, including sovereign interests, in the management of gray wolves within its borders. Third, disposition of this matter in favor of the Plaintiffs would impede the State's ability to protect these interests; such a disposition could cause irreparable harm to other wildlife species within the State, which the State manages for the people of Utah. Irreparable harm could also be done to another endangered species, the Mexican wolf, and Utah is undeniably a stakeholder in the management of that subspecies. Fourth, intervention is necessary because the Federal Defendants and other Intervenors are not capable of adequately representing the State's unique sovereign interests in the management of gray wolves in Utah.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether this Court should grant the State of Utah intervention as of right to represent the interests of its citizens in sustainable management of wolves through the Utah Wolf Management Plan. Fed. R. Civ. P. 24(a)(2). *See Sw. Center for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001).

2.   In the alternative, whether the State of Utah should be granted permission to intervene by this Court given that their defense of the delisting and the role of states in the management of wildlife share common questions of law and fact with Plaintiffs' claims. Fed. R. Civ. P. 24(b). *See Donnelly v. Glickman*, 159 F.3d 405, 411-412 (9th Cir. 1998).

## STATEMENT OF STANDING

As a sovereign with regulatory authority over the wildlife within the State, the State of Utah has standing to participate in this case. To establish standing, a party "must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A sovereign State has a special interest "to preserve its sovereign territory." *Mass. v. E.P.A.*, 549 U.S. at 519. Because of Utah's statutory mandate to "protect, propagate, manage, conserve, and distribute protected wildlife" throughout the State, Utah Code Ann. § 23-14-1(2)(a), this interest includes Utah's regulatory authority over the wildlife on that territory. Utah has a Utah Wolf Management Plan in place ready for the sustainable management of gray wolves within the state, and this regulatory authority will be pre-empted by the relisting of the gray wolf if Plaintiff is successful in this suit. As such, the State's injury will be redressed by a decision favorable to the United States thereby preserving Utah's sovereign and regulatory authority.

## BACKGROUND

Gray wolves have a long history of listing and delisting decisions under the Endangered Species Act ("ESA"), and an equally long history of legal challenges to these decisions. First listed as *Canis lupus* in 1978, gray wolves had an estimated population of approximately 1,040 wolves in the lower 48 states and a distribution limited to northeastern Minnesota and Isle Royale, Michigan. 85 Fed. Reg. 69778. Over the subsequent 40 or so years, gray wolf populations have increased substantially, and expanded their range into two (2) stable populations - the Western United States and the Great Lakes area - along with wolf dispersal to states surrounding those ranges. 85 Fed. Reg. 69778. As wolf populations recovered, and

surpassed recovery goals established by FWS, the agency undertook numerous attempts to delist gray wolves. Each of those attempts at delisting have been met with lawsuits seeking to maintain federal oversight and regulation of gray wolf populations, even though those populations had met recovery objectives identified by FWS, greatly expanded their territory in the lower 48 states, and otherwise satisfied the definition of recovery under the ESA.

For the sixth (6th) time since the initial listing decision, FWS has again undertaken efforts to recognize the recovered status of the gray wolf, remove them from the ESA, and restore wolf management to the states. 85 Fed. Reg. 69781. And, for the sixth (6th) time, a legal challenge has been filed to prevent this transfer of management responsibility. FWS' delisting decision extends to the several states the management authority necessary to address the biological, social, and economic issues that are associated with gray wolf populations. The State of Utah, through the Division of Wildlife Resources ("UDWR"), is the agency tasked with such management. UDWR serves as trustee and custodian of all wildlife within the State, including gray wolves. It has a statutory mandate to "protect, propagate, manage, conserve, and distribute protected wildlife" throughout the State. Utah Code Ann. § 23-14-1(2)(a). Utah therefore manages wildlife in trust for the diverse interests of its citizens (*Reynolds Decl.* ¶5), and State law directs UDWR and its Wildlife Board to seek to manage protected wildlife on a sustainable basis. Utah Code Ann. § 23-14-3(2)(b). Utah has a sovereign interest in managing gray wolves to provide both conservation of the species and sustained use of its habitat for the benefit of the people of Utah. *Reynolds Decl.* ¶7.

In addition to the statutory duty to manage wildlife, the State of Utah created a Gray Wolf Management Plan in anticipation of the delisting of gray wolves in the lower 48 states, which states: "The goal of this plan is to manage, study, and conserve wolves moving into Utah while avoiding conflicts with the wildlife management objectives of the Ute Indian Tribe; preventing livestock depredation; and protecting the investment made in wildlife in Utah." *Utah Division of Wildlife Resources Publication* #: 05-17, pg. iii. Utah's interest in gray wolf management involves more than simply managing gray wolf populations within its borders - it extends to protecting big game populations, responding to wildlife impacts on domestic

livestock, and managing habitat that gray wolves share with other animal species.[1] *Id.* ¶ 9. *See* 85
Fed. Reg. 69786 ("In North America, [gray wolves] are primarily predators of medium to large
mammals, including deer, elk, and other species, and are efficient at shifting their diet to take
advantage of available food sources.").

History has shown the need for active management of gray wolf populations, as well as
the negative impacts on big game populations in the absence of such management. Gray wolf
populations introduced in the Greater Yellowstone region by the FWS in 1995 rapidly grew
beyond recovery goals and began impacting some elk and deer populations in Idaho, Montana,
and Wyoming. *Id.* ¶19. Up to this point in time, gray wolf numbers in Utah have remained
relatively low, with between 15 to 20 wolves confirmed in Utah since 2002. *Id.* ¶21. However,
Colorado voters recently passed a voter initiative, Proposition 114, directing Colorado Parks and
Wildlife to initiate human-supported releases of gray wolves on the Western Slope of the
Rockies by 2022, thus inevitably increasing impacts in Utah from dispersing wolves. *Id.* ¶22-23.
*See also Reintroduction of Gray Wolves*, Colorado Proposition 114 (2020). Leaving Utah
without a means to manage the further dispersal of gray wolves into Utah will create conflict
between livestock and grazing operators, due to shared habitat. *Id.* ¶24. Even with management
in state control, gray wolves have demonstrated great resiliency so long as food is present and
have shown great ability to adjust to human impacts. 85 Fed. Reg. 69787.

Additionally, Utah is a stakeholder in Mexican Wolf management, an endangered gray
wolf subspecies in Arizona and New Mexico. *Id.* ¶29. Mexican wolves are highly susceptible to
gray wolf introgression, which would result in a genetic loss of the endangered Mexican wolf
subspecies.[2] *Id.* ¶30. As gray wolves continue to disperse into Utah, the State must have the
management tools necessary to respond to the biological, social, and economic realities that are
associated with now-resident wolves. Utah's ability to implement the tools and strategies for

---

[1] "Big Game" means "species of hoofed protected wildlife." Utah Code Ann. § 23-13-2(6).
[2] "Introgression" means "the entry or introduction of a gene from one gene complex into another
(as by hybridization)." Webster's Dictionary.

gray wolf management that are identified in the Grey Wolf Management Plan is contingent upon maintaining delisted status for wolves and continued state management authority.

Further, the State of Utah has tangible monetary concerns regarding a reversal of FWS' delisting decision. This comes in many different forms: lost hunting license and permit revenue due to reductions in the quality and quantity of big game populations; reduced revenue from the hunting guide and outfitter industry and reductions in tourism dollars spent by hunters visiting Utah to enjoy quality big game hunting opportunities; financial losses likely to be incurred by the agricultural community from wolf depredation on livestock; and possibly others. The State of Utah receives a combined revenue of $34,500,000 from "licenses, permits, applications, and federal aid generated directly from hunting in Utah [and] represents approximately 43% of DWR's annual operating budget." *Id.* ¶16. This revenue is used to develop and sustain wildlife populations and habitat in Utah. "History has shown that big game population declines generally diminish hunting opportunity and quality – and diminished hunting opportunities and quality generally result in decreased license and permit sales." *Id.* ¶17.

Along with the State's economic interest in direct hunting license revenues, there is the actual hunting industry involving guiding and outfitting services. This multimillion-dollar industry is highly dependent upon healthy big game herds and habitat. If either of those are in decline, the hunting industry sees heavy declines in revenue. These guiding and outfitting services provide jobs and income to Utah families. Continued listing of gray wolves as an endangered species as their population expands into Utah will only result in direct hardship for Utah citizens involved in the outdoor industry.

Finally, the State has a protectable and substantial interest in this litigation because decisions made regarding the gray wolf's delisting and control directly impacts thousands of agricultural producers throughout Utah. The Utah Department of Agriculture and Food ("UDAF") is statutorily "responsible for the administration and enforcement of all laws, services, functions and consumer programs related to agriculture" in the State and has the affirmative duty to "maintain agricultural production at the highest possible level and at the same time, to promote, to protect, and preserve the wildlife resources of the state." Utah Code Ann. § 4-23-

102(2) and § 4-23-102. *See Buttars Decl*. ¶3. Because of agricultural producer concerns with increased wolf populations in neighboring states and the impending impact on livestock, UDAF is actively monitoring, planning, and preparing to address grey wolf-related predatory control concerns on an ongoing basis.

In order to do so, UDAF works closely in coordination with the Agricultural and Wildlife Damage Prevention Board, UDWR, and the United States Department of Agriculture ("USDA") to formulate "the agricultural and wildlife damage prevention policy of the state," including implementing rules to carry out that policy. Utah Code Ann. § 4-23-105(1). *See Buttars Decl.* ¶4. Additionally, UDAF contracts yearly with USDA APHIS Wildlife Services ("WS") for trapping services necessary to protect livestock from natural predators such as coyote, bear, and mountain lions. *Buttars Decl.* ¶5. Should gray wolves begin predation on livestock, additional employees will be necessary to prevent livestock losses at a significant cost to the State. These costs are not insignificant. UDAF's current predator control program, as authorized under Title 4, Chapter 23 of the Utah Code, costs the State approximately $2,100,000 each year. *Id.* ¶9. This amount is in addition to the $550,000 currently expended by WS on wolf-related depredations annually. *Id.* ¶11.

Further, although challenging to quantify, the impact of wolves on livestock populations in the State is significant. *Id.* ¶12. Wolves typically push ungulates off mountain ranges and into pastures and other grazing areas. *Id.* ¶12. As a result, livestock using those areas face decreased access to grazable areas, which in turn causes an increased cost for agricultural producers, who must provide supplemental feed for livestock that traditionally have relied on open range resources to fulfill their alimentary needs. *Id.* ¶12. Many of these producers are already facing livestock losses and are having to expend additional monies due to severe drought conditions throughout the State. *Id.* ¶12. Because these producers already operate on extremely thin profit margins, producers have indicated that they will have to decrease their total head of livestock in order to remain solvent. *Id.* ¶12. In turn, decreased agricultural production directly impacts the State through decreased availability of consumer goods, decreased tax revenue and decreased funding to UDAF, which directly relies on livestock sales proceeds to fund many of the State's

programs, including predator control. *Id.* ¶13. In turn, reduced funding hampers UDAF's ability to protect livestock owners from loss of livestock due to predation. *Id.* ¶13.

This situation is further exacerbated by the State's mandate that programs must be fully funded through the collection of legislatively approved fees for each program. *Id.* ¶13. As such, the State has a direct fiduciary interest in the outcome of this litigation and cannot fulfill its affirmative duty to "maintain agricultural production at the highest possible level and at the same time, to promote, to protect, and preserve the wildlife resources of the State" if excluded from decisions regarding gray wolf management and control, which decisions are directly at issue in this case. Utah Code Ann. § 4-23-102(2) and § 4-23-102. *See also Buttars Decl.* ¶14.

## PROCEDURAL BACKGROUND

The Plaintiffs contend that FWS failed to consider historical range as part of the Significant Portion of its Range analysis. *NRDC Complaint* ¶ 138. S*ee also Defenders of Wildlife Complaint* ¶ 70. Procedurally, there are three complaints in this case. The above-entitled matter, 4:21-cv-561-JSW, filed by the Natural Resources Defense Council on January 25, 2021. *Defenders of Wildlife, et al.* was filed on January 14, 2021, and assigned Case No. 4:21-cv-344-JSW. Finally, *WildEarth Guardians, et al.* was filed on January 14, 2021, and assigned Case No. 4:21-cv-349-JSW. All cases were filed against the DOI and the FWS. On March 1, 2021, all parties agreed to consolidate the three pending matters into the above-entitled matter and alter answer and case management deadlines in a stipulated order signed by this Court.

## ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure provides two means by which an applicant may intervene in an action: intervention as a matter right governed by subsection (a), and permissive intervention governed by subsection (b). As discussed below, the proposed Defendant-Intervenor State of Utah satisfies both standards.

## I.     INTERVENTION OF RIGHT

Fed. R. Civ. P. 24(a)(2) governs intervention of right and provides, in relevant part:
> On timely motion, the court must permit anyone to intervene who . . .
> claims an interest related to the property or transaction that is the subject
> of the action and is so situated that disposing of the action may as a

practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Ninth Circuit provided direction on the Court's application of this standard in *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001). Generally, the Court must construe the rule liberally in favor of intervention. *Id.* at 818. Additionally, the Court's evaluation is "guided primarily by practical considerations, not technical distinctions." *Id.* Nevertheless, the applicant for intervention has the burden of showing that each of the four elements enunciated in *Berg*, 268 F.3d at 817 is met:

> (1) the application for intervention must be timely;
> (2) the applicant must have a 'significant protectable' interest related to the property or transaction that is the subject of the action;
> (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and
> (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Idaho Farm Bureau Fed. v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995).

Here, Utah is entitled to intervene as a matter of right because its motion is timely, it has significant, protectable interests that could be impaired by the disposition this action, and the Federal Defendants and existing Intervenors cannot adequately represent Utah's interests as a sovereign state.[3]

### A.    Timeliness

Three factors determine whether a motion to intervene is timely: (1) stage of the proceeding; (2) prejudice to other parties; and (3) reasons for and length of delay. *U.S. ex rel. McGough v. Covington Tech. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992). This motion to intervene is timely. There are three (3) pending actions consolidated into the above-entitled matter. Defenders of Wildlife, *et al.* filed their *Complaint for Declaratory and Injunctive Relief* on January 14, 2021. Natural Resources Defense Council, Inc. filed their *Complaint for Declaratory*

---

[3] For brevity and because elements 2 and 3 of the *Berg* analysis are so closely linked, the State has combined those arguments below into one section.

*and Injunctive Relief* on January 25, 2021. WildEarth Guardians, *et al.* filed their *Complaint for Declaratory and Injunctive Relief* on January 14, 2021. On February 26, 2021, the Court filed the stipulated order to alter answer and case management deadlines on March 1, 2021. Federal Defendants filed an answer on April 19, 2021. The NRA and Safari Club filed a Motion to Intervene, which this Court granted on May 3, 2021. Ct. Docket, Case No. 4:21-cv-00349, Doc # 39. Gray Wolf Agricultural Coalition and Sportsmen's Alliance, et al. subsequently filed motions to intervene, which were both denied on June 21, 2021. Ct. Docket, Case No. 4:21-cv-00349, Docs # 63, 64. Upon learning of these filings and related orders, the Governor's Office and its Executive Branch staff immediately conferred and determined that this motion should be filed.

By seeking intervention now, Utah avoids prejudicing the other parties or disrupting the Court's management of the case. The parties previously agreed to an expedited briefing schedule and the Plaintiffs recently filed their Motion for Summary Judgment. Ct. Docket, Case No. 4:21-cv-00349, Doc # 80. However, the Defendants and Intervenors have not yet filed their responses and the Court has not issued any substantive rulings on the Motion. Moreover, although the parties are operating under an expedited schedule, the Federal Defendants did not file their answer to the Complaint until April 19, 2021, and the Court only recently dealt with the intervention motions from Gray Wolf Agricultural Coalition and Sportsmen's Alliance, et al. Accordingly, the case is still in its early stages and Utah's motion to intervene is timely.

**B.      Interest and Impairment**

Utah has legally cognizable interests in this case because the management of gray wolves and their imminent impact on other wildlife and habitat implicates the State, and its interest in implementing its Grey Wolf Management Plan. Under Ninth Circuit precedent, the interest element "is primarily a practical guide" to including as many concerned parties as possible. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). Courts also recognize that interest is directly linked with impairment; if the intervenor "will suffer a practical impairment of its interests as a result of the pending litigation," the intervenor's interest is enough. *Id*. In considering both factors, the court follows "'practical and equitable considerations and construe[s] the Rule broadly in favor of proposed intervenors.'" *Id.*

Utah holds a direct interest in – and thus could be substantially impaired by – the result of this litigation for three interconnected reasons. First, Utah has a sovereign property interest in the wildlife within its borders. Utah Code Ann. § 23-13-3 (declaring wildlife property of the state). That sovereign property interest naturally includes management and trust duties. *Id*. § 23-14-1(1)(b) (making the Utah Division of Wildlife Resources the "trustee and custodian" of wildlife). *See also* Utah Code Ann. § 23-14-3(2)(b) (policy directs the State to seek to manage protected wildlife on a sustainable basis). *See also Reynolds Decl.* ¶8. Therefore, litigation that could affect Utah's wildlife management regime necessarily affects Utah as a sovereign. A state sovereign voice needs to be heard in this matter.

Second, a return to the overly restrictive protections of the Endangered Species Act would allow gray wolves to expand into Utah with virtually no way to mitigate impacts on ungulate populations, which are crucial to Utah's wildlife and agricultural industry. This will almost certainly have negative impacts on ungulate population of Utah that serve as a prey source for gray wolves and will result in economic harm to agricultural producers who will suffer livestock losses from wolves. *Id.* ¶19.[4] This is especially pressing due to the recent establishment of the Moffat pack in Northwestern Colorado, and the voter initiative in Colorado that called for human-supported releases of gray wolves along the Western Slope of the Rockies. *Reynolds Decl.* ¶22. Wolves from the Moffat Pack and any supplemental releases will almost certainly lead to dispersing wolves entering Utah. Utah must be able to manage these wolves and their biological, social, and economic impacts. A ruling in favor of the Plaintiffs would set a dangerous precedent that conflates conservation with restoration, the result of which would be that no species would be delisted unless they occupied their entire historical range. An unattainable goal given the ever-expanding sprawl of human development, and one that would

---

[4] "Ungulate" means "a hoofed typically herbivorous quadruped mammal (such as a pig, cow, deer, horse, elephant, or rhinoceros) of a group formerly considered a major mammalian taxon (Ungulata)" *Ungulate, Merriam-Webster, https://www.merriam-webster.com/dictionary/ungulate (last visited Apr 23, 2021).*

only mean that the impacts described above would last in perpetuity. Because properly executing

its wildlife management duties requires knowing and being able to manage wildlife populations,

Utah has an interest in this litigation. The Plaintiffs' contention that gray wolves should be

restored to the entirety of their historic range will bear on Utah's sovereign property interests and

Utah should have input.

Resolution of this litigation involves mandating a federal plan that could practically

impair Utah's property interests. And because property interests satisfy the intervention test,

*Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. 1981), Utah meets the interest and impairment

prongs, and the Court should grant this motion.

### C.    Inadequate Representation

Utah is a sovereign, and no sovereign, including the United States, can adequately

represent another's interests. In determining adequacy of representation, courts consider whether:

(1) a party will undoubtedly make all the intervenor's arguments; (2) the present party is capable

and willing to make such arguments; and (3) the intervenor would offer any necessary elements

to the proceedings that other parties would neglect. *United States v. City of Los Angeles*, 288

F.3d 391, 398 (9th Cir. 2002). This element does not require proof of inadequacy; the test is met

by simply showing representation "may be" inadequate. *Id.* (*quoting Trbovich v. United Mine

Workers of Am.*, 404 U.S. 528, 538 (1972)).

Here, none of the defendants can adequately represent Utah because DOI is an entity of a

separate sovereign, and the NRA and Safari Club are not sovereigns at all, and none carry the

burden of managing and supporting wildlife as Utah does. Indeed, precedent recognizes that

governments, uniquely, "litigat[e] on behalf of the general public." *Utah Ass'n of Counties v.

Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001); *accord Sierra Club v. Robertson*, 960 F.2d 83, 86

(8th Cir. 1992) (recognizing that state interests, including wildlife management, are unique and

support intervention). This distinctive aspect of the government's role often arises in comparing

governmental and private interests.

This concept is inherent in sovereign rights, which are possessed and exercised by a state

on behalf of its own citizens. Here, Utah seeks the same relief as DOI and existing Intervenors

but is situated very differently. Unlike DOI, Utah's concerns center on the state's sovereign right to manage wildlife, and less on the validity of the Endangered Species Act delisting process. Similarly, National Rifle Association and Safari Club are concerned with their membership's right to hunt and the diminished quality of hunting, as well as impacts on agricultural producers, that is likely to result from unmanaged wolf populations. While hunting and agriculture are distinct and compelling interests to the State of Utah and its citizens, Utah is also focused on wildlife population management, habitat health, and balancing wildlife interests with the social and economic impacts. UT Const. art. 1 §30. Stated simply, while the intervenors reference the importance of state-specific management of gray wolves, Utah has a unique interest and legal position, wholly distinct from DOI and other intervenors, because it is charged with evaluating and implementing its management plan with consideration for a multitude of competing state interests.

Finally, it is worth noting that Utah was specifically referenced in Plaintiffs' complaint regarding the State's plan to handle gray wolves upon delisting, and the statutory directives in the Utah Wolf Management Act (Title 23, Chapter 29 of Utah Code). *Defenders of Wildlife Complaint* ¶63.[5] The State of Utah asserts that those references misconstrue the directives in the Management Plan and the Act and contain allegations that are simply false. If not challenged, a ruling in favor of the Plaintiffs would give credence to this accusation on the record, and Utah has a significant interest in having a voice in this litigation. Moreover, although the management plans of several states are implicated in this litigation, no other state has intervened in this matter to discuss how delisting would affect those state-specific plans. This is particularly important to Utah, as its management plan must consider, in addition to the multitude of competing interests discussed, how gray wolf introgression could affect the endangered Mexican wolf species. These

---

[5] Plaintiffs' Amended Complaint removed the direct reference to Utah's Wolf Management Act, but they nevertheless continue to argue that gray wolves have not recovered in Utah and that FWS failed to apply the best available science when analyzing habitat suitability and survival of the discrete population of wolves in or near the State of Utah. (*See* Third Amended Complaint, Ct. Docket, Case No. 4:21-cv-00349, Doc # 79, ¶¶ 105, 143, 196).

1    are undoubtedly "necessary elements" of determining the status of the gray wolf in these various

2    states and the effect further federal control will have on state-specific management efforts. *See*

3    *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (outlining the elements to consider in

4    an "adequacy of representation" analysis and discussing the "necessary element" requirement).

5    Utah should therefore be granted intervention as of right.

6    **II.    PERMISSIVE INTERVENTION**

7            Even if Utah were not entitled to intervene as a right, then the Court should still grant

8    intervention permissively. Under Rule 24, the Court has the discretion to allow intervention

9    when the proposed intervenor "has a claim or defense that shares with the main action a common

10   question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising that discretion, courts grant

11   permissive intervention when a movant shows: (1) it shares a common question of law or fact

12   with the main action; (2) its motion is timely; and (3) the court has an independent basis for

13   jurisdiction over the applicant's claims. *Donnelly v. Glickman*, 159 F.3d at 412 . "[I]f there is a

14   common question of law or fact, the requirement of the rule has been satisfied and it is then

15   discretionary with the court whether to allow intervention." *Kootenai Tribe of Idaho v. Veneman*,

16   313 F.3d 1094, 1111 (9th Cir. 2002).

17          While differing in interest and perspective, Utah makes the same claims and asks for the

18   same relief as DOI and other defendant-intervenors, so the action will share common questions

19   of law. Utah agrees with the delisting rule - that the best available science indicates that gray

20   wolves are no longer in danger of going extinct. Plaintiffs' argument conflates conservation with

21   restoration – restoring gray wolves to their status prior to predation that caused their endangered

22   status. This argument, if accepted, not only entails impending detrimental impacts on Utah

23   wildlife and the agriculture industry from depredation by wolves, but also implies that no

24   endangered species in Utah will ever get delisted, unless they are restored to their historic range.

25   Not only is this an overly burdensome standard, but it is also contrary to the plain language of

26   the statute. Second, because the proceeding will be based on the administrative record, the

27   actions will share common questions of fact. There is an independent basis for jurisdiction over

28   Utah's claims because this Court has federal question jurisdiction under 28 U.S.C. § 1331 and

Administrative Procedure Act jurisdiction under 5 U.S.C. § 702. Finally, no prejudice will accrue through Utah's presence in this case. Should intervention as of right not be granted, Utah satisfies the alternative test for permissive intervention.

In sum, regardless of whether by right or by permission, the Court should allow Utah to intervene, assert its rights, and protect its interests as a sovereign state in this litigation.

## CONCLUSION

For the foregoing reasons, Utah respectfully requests that this Court grant its pending Motion to Intervene.

Respectfully submitted this 26th day of July 2021.


 _/s/ Kelsie Last_
KELSIE LAST
ANTHONY RAMPTON
KATHY DAVIS
JASON DEFOREST
*Attorneys for State of Utah*

### CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2021, I caused the foregoing document and attachments to be electronically filed with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.

_____/s/ Kelsie Last_____

KELSIE LAST